## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

**WILLIAM ROBINSON**
1119 Viers Mills Road
Rockville, MD  20851
   AND
**TRACIE LYERS**
127 West Main Street
Westminster, MD  21157
   *On Behalf of Three Classes of*
   *Similarly Situated Persons*     Case No:
     **Plaintiffs**

v.

**FAY SERVICING, LLC**
1801 S. Meyers Road Ste 10
Oakbrook Terrace, IL 60181
SERVE ON:
Registered Agent Solutions, Inc., Resident
Agent
836 Park Avenue, 2nd. Floor Unit B
Baltimore, MD  21201
   AND
**SERVIS ONE, INC. d/b/a BSI**
**FINANCIAL SERVICES**
1425 Greenway Drive, Suite 400
Irving, TX  75038
Serve On:
InCorp Services, Inc., Resident Agent
1519 York Road
Lutherville, MD  21093
   AND
**WILMINGTON SAVINGS FUND**
**SOCIETY, FSB, d/b/a CHRISTIANA**
**TRUST, NOT INDIVIDUALLY BUT AS**
**TRUSTEE FOR VENTURES TRUST**
**2013-I-H-R** ~~Same as s/o address~~
SERVE ON:
Serve On: Jeffrey Everhart
500 Delaware Ave.,
Wilmington, DE 19801
   **Defendants**

**CLASS ACTION COMPLAINT**
**&**
**REQUEST FOR JURY TRIAL**

1

Plaintiffs William Robinson ("Mr. Robinson") and Tracie Lyers ("Ms. Lyers")(collectively "Named Plaintiffs" or "Plaintiffs"), on their individual behalf and on behalf of three classes of similarly situated persons, through their attorneys Phillip R. Robinson and the Consumer Law Center LLC, hereby brings this Class Action Complaint and Jury Demand against Defendants Fay Servicing LLC ("Fay"), Servis One, Inc. d/b/a BSI Financial Services ("BSI"), and Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, Not Individually but as Trustee for Ventures Trust 2013-I-H-R ("Ventures Trust")(collectively "Defendants") and in support thereof state:

## I.  INTRODUCTION

1.      The claims outlined herein exemplify certain predatory and deceptive and debt collection practices which have garnered headlines and damaged the economy for the past several years in which certain so-called professionals flout the law and which have embroiled Named Plaintiffs, and the putative Classes—the Fay Class,[1] the BSI Class,[2] and an Inspection Fee Class[3]—they seek to represent.  As a direct and proximate result of Ventures Trust's illegal activity all designed to avoid paying taxes as admitted to the Maryland Court of Appeals by Ventures Trust's counsel on November 30, 2017, the Defendants have been enriched by receiving profits from the Named Plaintiffs and putative class members they were not legally entitled to collect (i) while Ventures Trust was acting without the required collection agency license and (ii) directly or indirectly from the capitalization of property inspection fees into BSI's standard modification/forbearance agreements on behalf of Ventures Trust.

---

[1]      The FAY Class is defined in ¶ 84 *infra*.

[2]      The BSi Class is defined in ¶ 85 *infra*.

[3]      The Inspection Fee Class is defined in ¶ 86 *infra*.

2.      Specifically, BSI and Fay have knowingly collected or attempted to collect from Named Plaintiffs, and the putative BSI and Fay Classes of similar persons they seek to represent on behalf of Ventures Trust, an unlicensed, collection agency, throughout the State of Maryland who may not collect or attempt to collect consumer debts while not licensed. Fay, BSI, and Venture Trust know the law and since 2007 the law has been clear that in order for a collection agency to collect or attempt to collect in the State of Maryland either directly or indirectly it must be licensed pursuant to Bus. Reg. § 7-301.

3.      The Defendants also know that longstanding Maryland law holds that unlicensed professionals may not profit from their illegal activities and in the case of mortgages, may only collect the principal portion claimed due from borrowers. Fin. Inst. § 11-523(b). *Compare Harry Berenter, Inc. v. Berman*, 258 Md. 290, 293 (1970); *McDaniel v. Baranowski*, 419 Md. 560, 587 (2011); *Thorpe v. Carte*, 252 Md. 523, 526 (1969); *Snodgrass v. Immler*, 232 Md. 416, 424 (1963); *Goldsmith v. Manufacturers' Liab. Ins. Co. of New Jersey*, 132 Md. 283 (1918).

4.      Further, a person who is required to be licensed as a collection agency may not shield its collection activities through persons like Fay or BSI who are required to have a separate license; all efforts to argue such an exemption under Maryland law have been rejected including failed legislation in the 2018 session of the Maryland General Assembly.

5.      In addition, BSI on behalf of Venture Trust and with its specific authority, has capitalized into BSI's and Ventures Trust's standard modification/forbearance agreements property inspection fees it claimed were allegedly due from borrowers whose loans are owned by Venture Trust even through Maryland law specifically provides that "a lender may not impose a lender's inspection fee in connection with a loan secured by residential real property." Com. Law § 12-121(b). *See also Taylor v. Friedman*, 344 Md. 572, 584 (1997)("For the foregoing reasons we conclude that

the legislative history does not so clearly demonstrate a purpose to limit the prohibition of § 12–121 to closing costs as to override the plain language of the statute"); Venture Trust has thereafter collected those illegal fees that are capitalized into its standard modification/forbearance agreements. In this case as the assignee of maker of the loans subject Mr. Robinson, Ms. Lyers, and the putative Inspection Fee Class members, Ventures Trust is now the lender and maker of the loans and Fay is its authorized agent to act on its behalf (having acquired the servicing rights from BSI).

6. By unfairly and deceptively aiding and assisting an unlicensed collection agency and illegally collecting property inspection fees in the State of Maryland, as described herein, BSI and Fay have further violated their duty of good faith and fair dealing pursuant to their own license by the State of Maryland (which it may not lend to any other person or entity) in connection with the servicing of mortgage loans. Md. Code Regs. 09.03.06.20. By acting as an unlicensed collection agency and collect property inspection fees through its standard modification/forbearance agreements, Ventures Trust has committed crimes under Maryland law. BUS. REG. § 7-401 provides that a person acting as an unlicensed collection agency "who violates this section is guilty of a misdemeanor, and on conviction, is subject to a fine not exceeding $1,000 or imprisonment not exceeding 6 months or both." *See also* COM. LAW § 12-122 (recognizing that knowingly and willfully demanding and seeking benefit from the collection of property inspection fees is a crime).

7. This Court has previously twice held that Ventures Trust may not collect and do business in the State of Maryland since it is unlicensed as a collection agency but is required to be licensed. The court orders entering these final judgments are attached hereto as Exhibits 1-2. Those decisions were affirmed by the Court of Special Appeals. *Blackstone v. Sharma*, 233 Md. App. 58, cert. granted, 456 Md. 53 (2017).

8.     Under Maryland law the property inspection fees capitalized by BSI and Ventures Trust into their standard modification/forbearance agreements and the putative class members' constitute "interest" as that term is defined in COM. LAW § 12-101(e) and therefore also constitutes "usury" as that term is defined in COM. LAW § 12-101(k).

9.     The Office of the Commissioner of Financial Regulation ("OCFR"), as the agency specifically authorized to enforce and regulate Maryland's mortgage lending laws, is entitled to deference for its interpretation of those laws and the Office of Consumer Protection Division in the Office of the Attorney General ("CPD") is entitled to deference for its interpretation of the Maryland Consumer Protection Act ("MCPA"). *Comm'r of Fin. Regulation v. Brown, Brown, & Brown, P.C.*, 144 A.3d 666, 675 (2016). Over the course of the former and current administration, OCFR's and CPD's analysis of the property inspection fee issue has not wavered and supports the position advanced by Named Plaintiffs in this action (i.e. that Ventures Trust as the successor assignee stands in the shoes of its assignor(s)) that neither BSI, Fay, or Ventures Trust may impose inspection fees pursuant to COM. LAW § 12-121) as evidence as follows:

    a.   OCFR issued an Industry Advisory on January 7, 2014 informing its licensees, including Seterus, that it was not permitted to impose inspection fees on mortgage borrowers. A true and correct copy of the notice is attached as Exhibit 5 to this Complaint and is also publicly available at https://www.dllr.state.md.us/finance/advisories/advisory-nonjudicialevictions.pdf.

    b.   On April 20, 2017 the OCFR issued a Summary Cease and Desist Order to Ocwen Loan Servicing LLC ("Ocwen") and its affiliates on various issues including Ocwen's unfair and deceptive practice, like the practices of BSI and Fay subject to this action, which improperly assessed inspection fees against the accounts of

borrowers in violation of COM. LAW § 12-121, including accounts of borrowers owned by GSE's including Fannie Mae. *See* Ocwen C&D Order at ¶¶ 79-83. Ocwen recently agreed, on February 23, 2018, to a resolution of the OCFR C&D Order and agreed to reimburse borrowers for the improper assessment and collection of inspection fees by: (i) cash refunds for fees paid, (ii) crediting accounts where the fee was assessed but not paid, and (iii) refunding interest incurred when Ocwen capitalized the illegal inspection fees onto borrowers' accounts as part of a modification that increased the unpaid principal balance. *See* Ocwen Settlement Agreement at ¶ 26 (available at https://www.dllr.state.md.us/finance/consumers/pdf/ocwencd.pdf).

c. On May 14, 2018 the CPD entered into an Assurance of Discontinuance with Nationstar Mortgage LLC ("Nationstar") in which the CPD determined that Nationstar's imposition of property inspection fees in violation of COM. LAW § 12-121 constituted an unfair and deceptive practice in violation of the MCPA.

10. Fay, BSI, and Ventures Trust has proximately caused damages and losses to the class members by assessing and collecting sums from Named Plaintiffs and the putative class members which are not lawfully due. Also, Fay, BSI, and Ventures Trust has been unjustly enriched and they should not be permitted to retain the benefit of its illegal activities.

## II. PARTIES

11. William L. Robinson is a resident and citizen of the State of Maryland and is the owner of the real property commonly referred to as 11701 Cygnet Drive in Waldorf, MD 20601 ("the Robinson Property") where he resides.

12.     Tracie Lyers is a resident and citizen of the State of Maryland and is the owner of the real

property commonly referred to as 14510 Medwick Road in Upper Marlboro, MD  20774 ("the

Lyers Property") where she resides.

13.     Defendant Ventures Trust is a Delaware Statutory Trust and no publically-held corporation

owns 10%  or more of Ventures Trust.  In addition:

      a.   Ventures Trust is a foreign statutory trust established for the primary purpose of

acquiring defaulted mortgage debts owed by consumers in Maryland and

elsewhere.  Ventures Trust 2013-I-H-R is also not exempt from the licensure

requirements for collection agencies in the State of Maryland.

      b.   Venture Trust represents a new new mortgage player who is actively purchasing

defaulted consumer, mortgage debts for pennies on the dollar claimed to be owed.

Then it pursues collection actions on those debts by initiating foreclosure litigation

and other collection activities. The *New York Times* explained that:

> Private equity and hedge fund firms have bought more than 100,000 troubl
> ed
> mortgages at a discount from banks and federal housing agencies, emergin
> g as
> aggressive liquidators for the remains of the mortgage crisis that erupted n
> early a decade ago.
>
> As the housing market nationwide recovers, this is a dark corner from
> which
> banks, stung by hefty penalties for bungling mortgage modifications an
> d
> foreclosures, have retreated. Federal housing officials, for the most part,
>  have
> welcomed the new financial players as being more nimble and creative
> than
> banks  with terms for delinquent borrowers...Federal  and  state  law
> makers are taking up the issue, questioning why federal agencies are
> selling loans at a discount of as much as 30 percent to such firms.

Matthew Goldstein, <u>As Banks Retreat, Private Equity Rushes to Buy Troubled Home Mortgages</u>, N.Y. Times, September 28, 2015.

c.   An example of the scope of this new market, one hedge fund entering this market, Oak Hill Advisors, the fund behind Ventures Trust in this action, announced in 2013 that it had closed "on a new $1.2 billion fund which seeks to capitalize on the dislocation in the U.S. residential mortgage market by investing in whole loans and other mortgage-related investments." <u>Oak Hill Advisors Closes $1.2 Billion U.S. Distressed Residential Mortgage Fund</u>, PR Newswire (October 1, 2013)(available at http://www.prnewswire.com/news-releases/oak-hill-advisors-closes-12-billion-us-distressed-residential-mortgage-fund-225952601.html)(last visited Nov. 7, 2017). *See also* <u>Louisiana Teachers' commits $75m to Oak Hill</u>, Private Debt Investor (August 7, 2013) (available at http://admin.privatedebtinvestor.com/News_And_Analysis/2013/August/News/Louisiana_Teachers__commits_$75m_to_Oak_Hill/)(last visited Nov. 7, 2017)("OHA Newbury Partners is targeting $750 million with a $1 billion hard-cap. The fund will invest in residential non-performing loans at a discounted purchase price with a specific focus on pools of loan consisting of early stage delinquencies and pre-foreclosures....non-performing loans represent a new fund strategy for the firm, Oak Hill...The vehicle has already completed its first investment, acquiring a pool of 532 non-performing loans from a 'major bank' at a significant discount"); Jared Bennett, <u>The Government is Selling Thousands of Homes to Hedge Funds Without Their Owners Knowledge</u>, The Atlantic (September 23, 2015)(available at http://www.theatlantic.com/business/archive/2015/09/the-government-is-selling-

thousands-of-homes-to-hedge-funds-without-their-owners-knowledge/406771/)(last visited November 7, 2017)("major investors are again buying mortgages by the thousands. But instead of dealing with shady subprime lenders, they are buying many of those same shaky loans from the government—at a significant discount....These non-performing loans appeal to investors because they are bought at a steep discount").

14.     Defendant BSI was the debt collector for Ventures Trust which is or was the owner of Named Plaintiffs' mortgage loans subject to this action.  BSI has served in this capacity on behalf of Ventures Trust since 2013 through some time in 2017.  Ventures Trust has delegated and assigned all duties related to Named Plaintiffs' loans (and the loans of the class members) to BSI as its authorized agent on its behalf.  These duties include the retention of attorneys/substitute trustees and other collection agencies to initiate foreclosures and assert proceedings against Maryland residents.

15.     Defendant Fay is also a debt collector for Ventures Trust in some instances related to Ventures Trust's mortgage lending/servicing practices.  Ventures Trust transferred its mortgage servicing business to Fay in 2017 and Fay thereafter continues to collect upon the loan on behalf of Ventures Trust.  While Fay is acting on Ventures Trust's behalf, Ventures Trust has delegated and assigned all duties related to the relevant loans (and the loans of the class members) to Fay as its authorized agent on its behalf.  These duties include the continued collection of fees, interest, and other profits from certain of the Named Plaintiffs and putative class members

### III.  JURISDICTION & VENUE

16.     Declaratory and injunctive relief are available pursuant to CTS. & JUD. PROD. §§ 3-401 – 3-415, and RULE 2-231(b)(2).

17.     Venue in this Court is proper in that the Defendants transact business within Montgomery County in relation to Montgomery County residents as part of their debt collection/mortgage servicing practices and includes conduct complained of occurred in Montgomery County, Maryland.

18.     This Court has equitable jurisdiction over the claims asserted herein. 9 M.L.E. Equity § 2.

19.     This Court has jurisdiction of this matter pursuant to Rule 2-231 in order to facilitate management of multiple similar claims.   Maryland law does not permit class actions to be maintained in the District Court of Maryland.

20.     This Court has jurisdiction asserted because the Defendants transact business, perform work, have interests in real property, and provides services in Maryland.

## IV. FACTS

### A.     ADDITIONAL BACKGROUND ON THE DEFENDANTS

21.     This case involves a new industry which has entered the field of consumer debt collection since the financial crisis which began.   Specifically, this industry of Wall Street related hedge funds have acquired hundreds and thousands of defaulted, consumer loans, which are non-performing and otherwise in default, for pennies on the dollar of what is claimed due and owing from consumers.

22.     The Court of Special Appeals recognized in a reported decision held that Ventures Trust may not collect or attempt to collect in the State of Maryland without a collection agency license. *Blackstone,* 233 Md. App. at 73–74.   In the consolidated oral arguments before the Court of Appeals on November 30, 2017, Ventures Trust admitted to the Court of Appeals that requiring Ventures Trust to become licensed as a collection agency was problematic because Ventures Trust would be required to pay taxes that it now claims (incorrectly) that it is not required to pay.   Fay

10

and BSI knows about the holding in *Blackstone* but have disregarded it and continued to collect on behalf of Ventures Trust.

### B.   FACTS ABOUT NAMED PLAINTIFF WILLIAM ROBINSON

23.   On or about June 15, 2004 Mr. Robinson refinanced the Robinson Property, his home and property, with the now failed BankUnited FSB ("Robinson Loan").   He refinanced the loan for personal, consumer purposes changing his then existing loan terms.   The proceeds of this refinance were used entirely for these personal, consumer purposes.

24.   Due to a reduction of household income, Mr. Robinson was not able to continue to make payments on the Robinson Loan were not made and the Robinson Loan became in default.   The then servicer and owner of his mortgage loan, BankUnited, NA confirmed this fact to Mr. Robinson and also to its successor in interest—i.e. Ventures Trust.

25.   The mortgage servicing of the Robinson Loan was service transferred from BankUnited, NA to BSI on or about January 2, 2015.   At that time BSI acquired and boarded over from BankUnited, NA the loan records related to the Robinson Loan which confirmed that the loan was in default.

26.   On December 14, 2014 Ventures Trust acquired by assignment and transfer all of BankUnited, NA's right, title, interest in and to said the Robinson Loan.   This transfer was memorized in an Assignment of Deed of Trust (Book 08828/Page 0125) in an instrument recorded in the land records of Charles County, Maryland.   Ventures Trust therefore acquired ownership of the Robinson Loan while it was in default.

27.   At the time of the purchase and assignment of the Robinson Loan, BSI and Ventures Trust accepted without question all representations and statements of its predecessors as to the fees, costs, interest, and other sums claimed due on the Robinson Loan.   Included in these the fees,

11

costs, interest, and other sums claimed due from Mr. Robinson on the Robinson Loan by BSI and Ventures Trust were property inspection fees billed to Mr. Robinson's loan account on multiple dates including: June 4, 2014, September 5, 2014, and December 11, 2014.

28.     At that time Ventures Trust acquired the ownership rights of the Robinson Loan it believed the loan was in default.  Ventures Trust's belief was based on BankUnited, NA's and BSI's records related to the loan.  Ventures Trust acquired the Robinson Loan for a sum less the sum then claimed due on the Robinson Loan.

29.     At no time did any person directly affiliated with Ventures Trust or acting on its behalf ever disclose to Mr. Robinson that Ventures Trust was not licensed as a Maryland collection agency and therefore was acting illegally.

30.     The sums claimed due by BSI on behalf of Ventures Trust included sums claimed due for interest, fees, and costs which amount to profits claimed by Ventures Trust on the Robinson Loan but Ventures Trust was not entitled to collect these as an unlicensed collection agency (*see* ¶ 3 *supra*).

31.     Because Fay, BSI, and Ventures Trust concealed from Mr. Robinson that Ventures Trust was not licensed as a collection agency and as an unlicensed, so-called professional, Ventures Trust had no legal right to demand any sums, directly or indirectly; nor was Ventures Trust entitled to profit from its illegal activities either directly or indirectly (*see* ¶ 3 *supra*).

32.     Mr. Robinson did not know until a period of less than two years before the commencement of this action that Ventures BSI, and Fay were acting illegally under Maryland and Federal law.

33.     While BSI was servicing the Robinson loan, and during the period of time less than three years before the commencement of this action, BSI collected on behalf of Ventures Trust from Mr. Robinson sums claimed due for interest, fees, and costs which amount to profits claimed by

Ventures Trust but Ventures Trust was not entitled to collect these as an unlicensed collection agency (*see* ¶ 3 *supra*).

34.     While BSI was servicing the Robinson Loan, BSI also on behalf of Ventures Trust agreed to modify the Robinson Loan less than three years ago which capitalized sums claimed due by BSI on behalf of Ventures Trust including alleged interest, fees, and costs which amount to profits claimed by Ventures Trust but Ventures Trust was not entitled to collect these as an unlicensed collection agency (*see* ¶ 3 *supra*).   Also included in the sums capitalized by BSI into the modification were the illegal property inspection fees imposed by BankUnited, FSB onto the Robinson Loan.

35.     After the Robinson Loan was modified by BSI on behalf of Ventures Trust, BSI continued to collect interest, fees, and costs from Mr. Robinson on behalf of Ventures Trust on a regular basis until the servicing of the Robinson Loan transferred from Fay to BSI on February 9, 2017.

36.     After the servicing rights on the Robinson Loan transferred to Fay, Fay continued to demand and collect on behalf of Ventures Trust alleged interest, fees, and costs from Mr. Robinson which amount to profits claimed by Ventures Trust but Ventures Trust was not entitled to collect these as an unlicensed collection agency (*see* ¶ 3 *supra*).

37.     The interest, fees, and costs collected by BSI and Fay on behalf of Ventures Trust from Mr. Robinson are liquidated sums that are known to the Defendants since they are required to track all sums collected from borrowers as part of their business practices.

38.     Because Ventures Trust, BSI, and Fay had concealed from him the fact that Ventures Trust was acting illegally as an unlicensed collection agency, Mr. Robinson has paid sums which the Defendants demanded directly or indirectly.  However, none of the Defendants ever disclosed that Ventures Trust was not permitted to profit from its illegal activities.

39.     Mr. Robinson's damages and losses asserted herein accrued within three years of the commencement of this action and otherwise are tolled by the Defendants' fraudulent conduct all designed to avoid paying taxes as admitted to counsel on behalf of Ventures Trust in the Court of Appeals on November 30, 2017.

40.     Mr. Robinson is also entitled to restitution damages and losses from Ventures Trust since it is not permitted to profit off its illegal activities in Maryland.  To suggest otherwise would permit Ventures Trust to retain profits from its illegal activity.

41.     The Robinson Loan is not satisfied.

### C.     FACTS ABOUT NAMED PLAINTIFF TRACIE LYERS

42.     On or about October 24, 2005 Ms. Lyers refinanced the Lyers Property, her home and property, with Bank of America, NA ("Lyers Loan").  She refinanced the loan, along with her then husband Marcus Lyers, for personal, consumer purposes changing her then existing loan terms. The proceeds of this refinance were used entirely for these personal, consumer purposes.  The Lyers Loan was thereafter transferred to Ventures Trust on or about January 30, 2014.

43.     Due to a reduction of household income, Ms. Lyers was not able to continue to make payments on the Lyers Loan and it became in default as of January 1, 2011.  This was confirmed in writing to Ms. Lyers in correspondence from Bank of America, NA dated April 26, 2011 and July 20, 2017.

44.     From December 2, 2009 through September 24, 2010, Bank of American, NA imposed upon the Lyers Loan certain charges for property inspection fees including fees imposed on the following dates: December 2, 2009, January 1, 2010, February 8, 2010, March 1, 2010, April 2, 2010, May 10, 2010, June, 1, 2010, July 1, 2010, August 2, 2010, August 31, 2010, September 24, 2010.

45.     Effective January 1, 2014 BSI acquired the mortgage servicing rights to the Lyers Loan from Bank of America, NA at a time when BSI believed the loan to be in default.

46.     On January 30, 2014, Ventures Trust acquired ownership interest in the Lyers Loan.  In an Assignment of Deed of Trust recorded in the land records of Prince George's County, Maryland (Book 35673, Page 592) Ventures Trust was assigned all of Bank of America's rights accrued or to accrued under the Deed of Trust including all money due.

47.     As the time of this assignment of the Martinson Loan to Ventures Trust, BSI was its authorized mortgage servicer.  In addition, at this time both BSI and Ventures Trust believed the Lyers Loan was in default.  Ventures Trust acquired the Lyers Loan for a sum less the sum then claimed due on the Lyers Loan.

48.     At the time of the purchase and assignment of the Lyers Loan, Ventures Trust and BSI accepted without question all representations and statements of its predecessors as to the fees, costs, interest, and other sums claimed due on the Lyers Loan.  Included in these the fees, costs, interest, and other sums claimed due from Ms. Lyers on the Lyers Loan by Ventures Trust and BSI were property inspection fees imposed upon the Lyers Loan by Bank of America, NA as discussed *supra*.

49.     At no time did any person directly affiliated with Ventures Trust or acting on its behalf ever disclose to Ms. Lyers that Ventures Trust was not licensed as a Maryland collection agency and therefore was acting illegally.

50.     The sums claimed due by BSI on behalf of Ventures Trust included sums claimed due for interest, fees, and costs which amount to profits claimed by Ventures Trust on the Lyers Loan but Ventures Trust was not entitled to collect these as an unlicensed collection agency (*see* ¶ 3 *supra*).

51.    Because Fay, BSI, and Ventures Trust concealed from Ms. Lyers that Ventures Trust was not licensed as a collection agency and as an unlicensed, so-called professional, Ventures Trust had no legal right to demand any sums, directly or indirectly; nor was Ventures Trust entitled to profit from its illegal activities either directly or indirectly (*see* ¶ 3 *supra*).

52.    Ms. Lyers did not know until a period of less than two years before the commencement of this action that Ventures BSI, and Fay were acting illegally under Maryland and Federal law.

53.    While BSI was servicing the Lyers loan, and during the period of time less than three years before the commencement of this action, BSI collected on behalf of Ventures Trust from Mr. Lyers sums claimed due for interest, fees, and costs which amount to profits claimed by Ventures Trust but Ventures Trust was not entitled to collect these as an unlicensed collection agency (*see* ¶ 3 *supra*).

54.    While BSI was servicing the Lyers Loan, BSI also on behalf of Ventures Trust agreed to modify the Lyers Loan less than three years ago which capitalized sums claimed due by BSI on behalf of Ventures Trust including alleged interest, fees, and costs which amount to profits claimed by Ventures Trust but Ventures Trust was not entitled to collect these as an unlicensed collection agency (*see* ¶ 3 *supra*).  Also included in the sums capitalized by BSI into the modification were the illegal property inspection fees imposed by Bank of America, NA onto the Lyers Loan.

55.    After the Robinson Loan was modified by BSI on behalf of Ventures Trust, BSI continued to collect interest, fees, and costs from Ms. Lyers on behalf of Ventures Trust on a regular basis until the servicing of the Lyers Loan transferred from Fay to BSI on February 10, 2017.

56.    After the servicing rights on the Lyers Loan transferred to Fay, Fay continued to demand and collect on behalf of Ventures Trust alleged interest, fees, and costs from Ms. Lyers which

amount to profits claimed by Ventures Trust but Ventures Trust was not entitled to collect these as an unlicensed collection agency (*see* ¶ 3 *supra*).

57.    The interest, fees, and costs collected by BSI and Fay on behalf of Ventures Trust from Ms. Lyers are liquidated sums that are known to the Defendants since they are required to track all sums collected from borrowers as part of their business practices.

58.    Because Ventures Trust, BSI, and Fay had concealed from her the fact that Ventures Trust was acting illegally as an unlicensed collection agency, Ms. Lyers has paid sums which the Defendants demanded directly or indirectly.  However, none of the Defendants ever disclosed that Ventures Trust was not permitted to profit from its illegal activities.

59.    Ms. Lyers' damages and losses asserted herein accrued within three years of the commencement of this action and otherwise are tolled by the Defendants' fraudulent conduct all designed to avoid paying taxes as admitted to counsel on behalf of Ventures Trust in the Court of Appeals on November 30, 2017.

60.    Ms. Lyers is also entitled to restitution damages and losses from Ventures Trust since it is not permitted to profit off its illegal activities in Maryland.  To suggest otherwise would permit Ventures Trust to retain profits from its illegal activity.

61.    The Lyers Loan is not satisfied.

### D.    FACTS RELATED TO THE DEFENDANTS AND THE CLAIMS BEFORE THIS COURT

62.    The primary portion of BSI's mortgage servicing portfolio, according to published reports, includes servicing for non-performing, sub-performing, and distressed assets like those acquired by Ventures Trust.  The value of BSI's and Fay's book of business exceeds $50,000,000.00.  This estimate is based on the fact that BSI and Fay retain a portion of sums its collects for its clients, including Ventures Trust, as part of their collections work.

63.    A primary, principal portion of Ventures Trust's business is to acquire non-performing, defaulted loans for sums less than what is claimed due on each loan and then to proceed to collect directly and indirectly on the loans.   The value of Ventures Trust's assets exceeds $50,000,000.00.

64.    Ventures Trust is not now and never has been licensed as a Maryland collection agency.  It has however, acted as an unlicensed collection agency and a debt collector by demanding and attempting to collecting through its authorized agents, including BSI and Fay, sums it is not legally entitled to collect from Named Plaintiffs and the putative class members since it is acting without a mandatory license as a collection agency because its business model is simply to acquire defaulted debts in default for pennies on the dollar of what is claimed to be due and owing from borrowers like the Named Plaintiffs and Class members.

65.    BSI relied upon the records of Ventures Trust for its belief that the Named Plaintiffs and the Class members' loans were in default at the time it acquired the servicing rights of their loans and performed no investigation of the facts available to it.

66.    BSI and Fay, are debt collectors, have communicated directly or indirectly concerning consumer debts owned by Ventures Trust with demands and threats for payments and threats and actual acts to take judicial action against the Named Plaintiffs and the putative class members on behalf of Ventures Trust, including foreclosure, even though Ventures Trust has no legal right to collect indirectly through Fay or BSI as an unlicensed collection agency through foreclosure or otherwise.

### E.    THE DEFENDANTS' LEGAL DUTIES RELATED TO THE SUBJECT TRANSACTIONS SUBJECT TO THIS ACTION

67.    The Court of Appeals in 2005 recognized that a real estate professional who had no direct communication with a borrower nevertheless had a duty to a consumer under the Maryland Consumer Protection Act and Maryland common law to make a "reasonable investigation" of the

true facts in the real estate transaction on which the borrower (and other parties) would rely in order to complete the transaction. *Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276 (2005). This duty of care applies to the Defendants as their work involves secured, consumer mortgage loans acquired while in default.

68.     Since 1970, "if a statute requiring a license for conducting a trade, business or profession is regulatory in nature for the protection of the public, rather than merely to raise revenue, an unlicensed person will not be given the assistance of the courts in enforcing contracts within the provisions of the regulatory statute because such enforcement is against public policy." *Harry Berenter, Inc. v. Berman*, 258 Md. 290, 293, 265 A.2d 759, 761 (1970). This duty to be licensed before utilizing the state courts applies to Ventures Trust which acts as a collection agency but is not licensed as one.

69.     Pursuant to 12 U.S.C.A. § 2605(k)(1)(C)(E), BSI and Fay have duties to the Named Plaintiffs and the Class members to (i) take appropriate steps to avoid foreclosure as part of its standard servicer's duties and (ii) comply with any other obligation(s) found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of 12 U.S.C.A. § 2605. Pursuant to 12 C.F.R. § 1024.38(b)(1)(i), Fay and BSI are required to "[p]rovide accurate and timely disclosures to a borrower as required by [12 C.F.R. § 1024.38] or other applicable law." Pursuant to 12 C.F.R. § 1024.35(b)(5), Fay and BSI are not permitted to "impos[e]… a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower." It is unreasonable and a violation of its duties for BSI and Fay to demand inaccurate sums due to Ventures Trust which is an unlicensed collection agency and has no right to collect any sums from the Named Plaintiffs and putative class members while not licensed.

70.     The Maryland Mortgage Fraud Protection Act, REAL PROP. § 7-401, *et seq.*, establishes a statutory duty upon the Defendants to disclose to mortgage borrowers and homeowners, like the Named Plaintiffs and the Class members in this action,  to disclose material information with respect to the mortgage lending process which includes the servicing and foreclosure (and threatened foreclosure of mortgage loans). *Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 531 (D. Md. 2013); *Castle v. Capital One, N.A.*, No. CIV.A. WMN-13-1830, 2014 WL 176790, at *5 (D. Md. Jan. 15, 2014; *Stovall v. SunTrust Mortgage, Inc.*, No. CIV.A. RDB-10-2836, 2011 WL 4402680 (D. Md. Sept. 20, 2011).  In this case BSI, Fay, and Ventures Trust have duties to disclose to the Named Plaintiffs and the Class members (and the state courts) that Ventures Trust is unlicensed as a collection agency and they have failed to do so. *Compare McDaniel v. Baranowski*, 419 Md. 560, 587, 19 A.3d 927, 943 (2011).

### F.     MARYLAND'S RESPONSE TO THE UNLICENSED COLLECTION AGENCY AND DEBT COLLECTION CRISIS AS RELATED TO THE PLAINTIFF

71.     As part of its routine and on-going collection practices, Ventures Trust regularly collects or attempts monthly mortgage payments and/or forbearance payments or short-payoffs by and through the mails and interstate wires through its authorized servicers BSI and Fay from the Named Plaintiffs and the Class members.  Ventures Trust, BSI, and Fay also attempt to collect from the same through civil litigation in Maryland Courts authorized by it and through its authorized agents, including actions which are filed as foreclosure actions in the state courts and also through bankruptcy proceedings in the United States Bankruptcy Court for Maryland.

72.     Under BUS. REG. §7-301, a person must have a license to do business as a collection agency in the State of Maryland.

73.     The Maryland Commissioner of Financial Regulation, the state regulator of persons who

acquire consumer debt after default and file lawsuits in Maryland to collect the debt, has clearly

stated that:[4]

> ... 4. The position of the Agency is that, unless otherwise exempt, a person who
> brings actions in Maryland State courts to collect consumer claims which were
> acquired when the claims were in default is knowingly and willfully doing
> business as a "collection agency" in the State under [Bus. Reg.] § 7-101(c). This
> includes, but is not limited to, the named Plaintiffs in such judicial actions, which
> will normally be the owners of the consumer debt.
>
> 5. Thus the Agency's position is that a Plaintiff in a Maryland State court action
> brought to collect a consumer claim which was acquired when the claim was in
> default is required to be licensed as a collection agency under MCALA, and is
> subject to the regulatory authority of the Agency in the conduct of that litigation.
>
> 6. The position of the Agency is that a person who brings judicial actions in Maryland
> State courts to collect consumer claims which were acquired when the claims were
> in default also meet the definition of "collector" under CL § 14-201(b) of the
> Maryland Consumer Debt Collection Act ("MCDCA," at Commercial Law
> Article ("CL"), § 14-201 *et seq.,* Annotated Code of Maryland) and of "debt
> collector" under 15 U.S.C. § 1692(a) of the Fair Debt Collection Practices Act
> ("FDCPA," at 15 U.S.C. § 1692, *et seq.*)...

74.     Every collection effort in Maryland authorized by BSI or Fay on behalf of Ventures Trust

(who is acting without a Collection Agency license), including each and every foreclosure action

filed in Maryland courts on its behalf as well as the collection and attempted collection of any mortgage

payments, and each and every judgment lien filed in Maryland, is an unfair or deceptive trade practice

since these actions were committed without the right to do so as stated by the legislature.

75.     Before the 2007 session of the Maryland General Assembly, debt buyers like Ventures

Trust sought to avoid Maryland statutes and regulation by asserting that they were not subject to

Maryland statues addressing collection agencies. *See,* Legislative History for 2007 chap. 472 (Bus.

---

[4] *In the Matter of: Midland Funding, LLC, et al.,* before the Maryland State Collection
Agency Licensing Board in the Office of the Commissioner of Financial Regulation, CFR-
FY-2010-063.

Reg. 7-101) HB 1324.  As a result the 2007 General Assembly required Ventures Trust, and other debt buyers who acquire defaulted, consumer debts for less than the sums claimed due, to acquire a license by October 1, 2007.  *Id.*  All persons had/have knowledge of the law.

76.     Then Maryland Commissioner of Financial Regulation, Charles W. Turnbaugh, explained the purpose of the bill, HB 1324, at the time as follows:

> … The law does not require licensing for businesses that only collect their **own** consumer debts, unless the business uses a name or other artifice that indicates that another party is attempting to collect the consumer debt.  However, the evolution of the debt collection industry has created a "loophole" used by some entities as a means to circumvent current State collection agency laws.  Entities, such as "debt purchasers" who enter into purchase agreements to collect delinquent consumer debt rather than acting as an agent for the original creditor, currently collect consumer debt in the State without complying with any licensing or bonding requirement.  The federal government has recognized and defined debt purchasers as collection agencies, and requires that these entities fully comply with the Federal Fair Debt Collection Practices Act.  **This legislation would include debt purchasers within the definition of a "collection agency," and require them to be licensed by the Board before they may collect consumer claims in this State** … [emphasis added].

77.     However, Ventures Trust has attempted to collect from Named Plaintiffs and the Class through BSI and Fay while it did not have the mandatory license required by MCALA and continued its business of collecting debts acquired in default and filing collection lawsuits in Maryland courts without the right to do so.  BSI and Fay has known that Ventures Trust was unlicensed but each acted anyway even though each knew, as any other person knew, under Maryland law Ventures Trust was required to be licensed.

78.     The Office of the Commissioner of Financial Regulation, a division within the Department of Labor, Licensing and Regulation ("Agency") and the Maryland State Collection Agency Licensing Board ("Board"), as the agencies charged with enforcement of the Maryland Collection Agency Licensing Act, have consistently taken the position that Consumer Debt Purchasers--i.e. persons who acquire consumer debt which is in default at the time of acquisition and who collect

such debt through civil litigation--are 'collection agencies' and are subject to the licensing requirements of the Maryland Collection Agency Licensing Act. Affidavit of Gordon M. Cooley at ¶ 5, Commissioner of Financial Regulation (dated May 10, 2016).[5]

79.     Following enactment of HB 1324 the Maryland Commissioner of Financial Regulation issued its position on the change in law as DLLR Advisory Notice No. 07-06 ("Advisory"). The Advisory clearly stated the Commissioner's official position on the changes to MCALA, i.e.: "… effective October 1, 2007 any person engaged in the collection of a consumer claim the person owns, if the claim was in default when the person acquired it, is required to be licensed as a collection agency pursuant to HB 1324 …".

80.     Even though multiple state circuit courts throughout the State of Maryland, including this Court and the Court of Special Appeals, have held that Ventures Trust has no right to attempt to collect indirectly or directly in the State of Maryland, as demonstrated *supra*, Ventures Trust has continued attempt to collect and actually collected from the Named Plaintiffs and the putative class members in disregard of the findings and order of the various court orders against it.

81.     Even though each has had sufficient notice that that Ventures Trust has no legal right to collect in the State of Maryland while acting as an unlicensed collection agency as described *supra*, BSI and Fay reported debts of the Named Plaintiffs and the Class members to the credit bureaus for the purpose of pressuring the named Plaintiffs and the Class members to pay a debt to Ventures trust in more than fifty other instances.

82.     BSI and Fay have willfully and knowingly sought, directly or indirectly, to collect debts on behalf of its unlicensed principals (i.e. Ventures Trust), including threatened to utilize the

---

[5] This document was filed in Case No. 24-C-11-007101 as an Exhibit to the Office of the Commissioner of Financial Regulation's Motion to Quash (Doc. 110) in the Circuit Court for Baltimore City, Maryland.

foreclosure process when Ventures Trust has no legal right to pursue the foreclosure process. BSI and Fay have also recklessly disregarded the notice before each of them = in the proceeding paragraphs, failed to conduct reasonable investigations to inquiries it received, and instead proceeded in its collection attempts with knowledge that Ventures Trust was an unlicensed collection agency.

83.    Further, BSI and Fay have conspired with Ventures Trust and its affiliates to collect on Ventures Trust's behalf even though Ventures Trust has no legal right to collect without the mandatory license required by Maryland law (either directly or indirectly). These are material misrepresentations and false statements and omissions by BSI and Fay which would and have mislead the least sophisticated consumer by: (i) enticing voluntary payments for sums not legally collectable by Ventures Trust or (ii) led an unsophisticated consumer to forgo a valid defense as recognized by various state court orders.

### Named Plaintiffs' Class Allegations

84.    This action is also properly brought as a Class under MD. RULE 2-231. Named Plaintiffs propose, as the definition of the **Fay Class**, that it be defined as follows:

> Those persons who paid, directly or indirectly, any amount to Ventures Trust which were applied by Fay in the three years proceeding the commencement of this action to interest, fees, costs, and other charges other than the principal portion of payments due from them.

85.    This action is also properly brought as a Class under MD. RULE 2-231. Named Plaintiffs propose, as the definition of the **BSI Class**, that it be defined as follows:

> Those persons who paid, directly or indirectly, any amount to Ventures Trust which were applied by BSI in the three years proceeding the commencement of this action to interest, fees, costs, and other charges other than the principal portion of payments due from them.

86.     This action is also properly brought as a Class under MD. RULE 2-231. Named Plaintiffs

propose, as the definition of the **Inspection Fee Class**, that it be defined as follows:

> Those persons in the State of Maryland from whom Ventures Trust has collected property
> inspection fees from which were capitalized into any loan modification agreement executed
> on its behalf by BSI or Fay the subject loans were not satisfied more than six months
> proceeding the commencement of this action or are not satisfied at all.

87.     The particular members of the BSI Class, FAY Class, and Inspection Fee classes are

capable of being described without difficult managerial or administrative problems.  The members

of the BSI Class, FAY Class, and Inspection Fee are also readily identifiable from the information

and public records available through the State of Maryland Land Records and the Office of the

Commissioner of Financial Regulation.  Upon information and belief, based on a review of public

records, the size of the BSI Class, FAY Class, and Inspection Fee classes exceeds at least fifty

persons for each class.

88.     The BSI Class, FAY Class, and Inspection Fee members are sufficiently numerous that

individual joinder of all members is impractical.  This allegation is based in part on the fact that

VENTURES TRUST acquired many Deeds of Trust, and the loans related thereto, according to

public records, throughout the State of Maryland related to the Named Plaintiffs and the BSI Class,

FAY Class, and Inspection Fee class members.  Further, according to public records VENTURES

TRUST, through BSI and FAY, has attempted and/or actually utilized the collection tools of the

state courts to collect from BSI Class, FAY Class, and Inspection Fee class members but not

disclosed to those courts that it is not permitted to do so.

89.     There are questions of law and fact common to the BSI Class, FAY Class, and Inspection

Fee classes which predominate over any questions affecting only individual members of the BSI

Class, FAY Class, and Inspection Fee classes and, in fact, the wrongs alleged against BSI, FAY

VENTURES TRUST by the BSI Class, FAY Class, and Inspection Fee class members and the

remedies sought by Named Plaintiff and the BSI Class, FAY Class, and Inspection Fee class against the Defendants are identical, the only difference being the exact sum which each BSI Class, FAY Class, and Inspection Fee class member is entitled to receive.

90.     The common issues related to FAY Class include, but are certainly not limited to:

i.      Whether VENTURES TRUST was licensed as a collection agency and if so at what time;

ii.     Whether FAY has the right to collect on behalf of VENTURES TRUST while it was unlicensed as a collection agency;

iii.    Whether the FAY Class members are third party beneficiaries of FAY's duty of good faith under its license pursuant to Md. Code Regs. 09.03.06.20, 12 U.S.C.A. § 2605, and 12 U.S.C.A. § 2605's Regulation X?

iv.     Whether VENTURES TRUST is entitled to any relief by a Maryland Court when VENTURES TRUST was acting as unlicensed collection agency?

v.      Whether VENTURES TRUST, or anyone else acting on their behalf, ever disclosed to the Named Plaintiffs and the FAY Class members and the Maryland Courts as part of their collection attempts that VENTURES TRUST did not have the required collection agency license;

vi.     Whether FAY's and VENTURES TRUST's concealment of the true facts concerning VENTURES TRUST's illegal status should toll any limitations period(s) applied to the FAY's Class' claims;

vii.    Whether FAY concealed from members of the FAY Class that VENTURES TRUST was not licensed as a collection agency and had no right to collect in the State of Maryland without the license;

    viii.    Whether FAY is permitted to continue collecting upon the loans of the FAY Class members;

    ix.    Whether FAY and VENTURES TRUST may assess to the accounts of the Fay Class members the interest, fees and expenses they incurred by utilizing the state court system illegally since VENTURES TRUST was acting as an unlicensed collection agency and unlicensed professionals are not permitted to profit from their illegal activities?

91.    The common issues related to the BSI Class include, but are certainly not limited to:

    i.    Whether VENTURES TRUST was licensed as a collection agency and if so at what time;

    ii.    Whether BSI had the right to collect on behalf of VENTURES TRUST while it was unlicensed as a collection agency;

    iii.    Whether the BSI Class members are third party beneficiaries of BSI's duty of good faith under its license pursuant to Md. Code Regs. 09.03.06.20, 12 U.S.C.A. § 2605, and 12 U.S.C.A. § 2605's Regulation X?

    iv.    Whether VENTURES TRUST is entitled to any relief by a Maryland Court when VENTURES TRUST was acting as unlicensed collection agency?

    v.    Whether VENTURES TRUST, or anyone else acting on their behalf, ever disclosed to the Named Plaintiffs and the BSI Class members and the Maryland Courts as part of their collection attempts that VENTURES TRUST did not have the required collection agency license;

vi.   Whether BSI's and VENTURES TRUST's concealment of the true facts concerning VENTURES TRUST's illegal status should toll any limitations period(s) applied to the BSI Class' claims;

vii.   Whether BSI concealed from members of the BSI Class that VENTURES TRUST was not licensed as a collection agency and had no right to collect in the State of Maryland without the license;

viii.   Whether BSI is permitted to continue collecting upon the loans of the BSI Class members and to retain the illegal profits it collected on behalf of Ventures trust from the BSI Class members;

ix.   Whether BSI and VENTURES TRUST may assess to the accounts of the BSI Class members the interest, fees and expenses they incurred by utilizing the state court system illegally since VENTURES TRUST was acting as an unlicensed collection agency and unlicensed professionals are not permitted to profit from their illegal activities?

92.   The common issues related to the Inspection Fee Class members include, but are certainly not limited to:

i.   Whether VENTURES TRUST is entitled to demand and capitalized into loan modification property preservation and/or inspection fees on the mortgage loan accounts of the Inspection Fee Class;

ii.   Whether VENTURES TRUST is entitled to demand and collect, directly or indirectly through BSI and Fay, upon property preservation and/or inspection fees capitalized into the mortgage modifications of the Inspection Fee Class members;

iii.    Whether this Court may declare that VENTURES TRUST's practices and policies concerning the capitalization of property preservation fees against the mortgage loan accounts of the Inspection Fee Class members violate COM. LAW § 12-121(b) and *Taylor v. Friedman*, 344 Md. 572, 584 (1997);

iv.    Do the inspection fees charges collected by VENTURES TRUST, directly or indirectly through BSI and Fay, against the Inspection Fee class members' accounts constitute "interest" as that term is defined in COM. LAW § 12-101(e) and therefore also constitute "usury" as that term is defined in COM. LAW § 12-101(k); and

v.    Whether VENTURES TRUST is liable for statutory damages pursuant to Inspection Fee class members pursuant to COM. LAW § 12-121(a)(1)(ii) for each separate property inspection fee which was capitalized into a loan modification offered by VENTURES TRUST to an Inspection Fee Class member's account.

93.    Named Plaintiffs' legal and equitable claims are typical of and identical to each member of the BSI Class, FAY Class, and Inspection Fee classes and will be based on the same legal and factual theories.

94.    VENTURES TRUST's, Fay's, and BSI's defenses (which defenses are denied) would be typical of and identical for each member of the FAY Class, BSI Class, and Inspection Fee classes and will be based on the same legal and factual theories.

95.    The Named Plaintiffs will also fairly and adequately represent and protect the interests of the BSI Class, FAY Class, and Inspection Fee classes.  Named Plaintiffs have retained counsel experienced in consumer class actions including actions involving unlawful lending and debt collection practices.  Named Plaintiffs do not have any interests which might cause them not to

vigorously prosecute this action or that are otherwise adverse to the interests of the members of the FAY Class, BSI Class, and Inspection Fee classes.

96.     Certification of a BSI Class, FAY Class, and Inspection Fee classes is appropriate under MD. RULE 2-231(b)(2) and (b)(3) is appropriate as to the FAY Class, BSI Class, and Inspection Fee class members in that common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy.  A class action will cause an orderly and expeditious administration of BSI Class, FAY Class, and Inspection Fee class members' claims, and economies of time, effort and expenses will be fostered and uniformity of decisions will be ensured.

97.     Named Plaintiffs' claims are typical of the claims of the FAY Class, BSI Class, and Inspection Fee class members.

98.     Named Plaintiffs will fairly and adequately protect the interests of all BSI Class, FAY Class, and Inspection Fee class members in the prosecution of this action. They are similarly situated with, and have suffered injuries similar to the members of the BSI Class, FAY Class, and Inspection Fee classes they seek to represent. Named Plaintiffs have been wronged, wish to obtain redress of the wrong, and want the Defendants stopped from enriching themselves via illegal activities or otherwise perpetrating similar wrongs on others on behalf of unlicensed collection agencies.

99.     VENTURES TRUST's, FAY's, and BSI's failure to disclose the true status of VENTURES TRUST to Named Plaintiffs and the BSI Class, FAY Class, and Inspection Fee class members tolled the running of any limitations that may otherwise apply to the claims of the Named Plaintiffs and the members of the BSI Class, FAY Class, and Inspection Fee class members until VENTURES TRUST, FAY, and BSI made the disclosures they were required to make.

100.    FAY and BSI have known since 2007 that VENTURES TRUST was required to have a license to act as a collection agency in the State of Maryland. Instead of requiring VENTURES TRUST to comply with the law before they began to act on its behalf, FAY and BSI chose to evade the path described above to improperly circumvent Maryland law and improperly lend their licenses to VENTURES TRUST.  At all times relevant and material to this action, with knowledge that VENTURES TRUST failed to obtain the required license to act as collection agencies, BSI and FAY attempted to collect or actually collect on its behalf from the Named Plaintiffs and BSI Class, FAY Class, and Inspection Fee class members.

101.    The Named Plaintiff and members of the BSI Class, FAY Class, and Inspection Fee classes were not required to assume that VENTURES TRUST were engaging in illegal activities with the aid and assistance of FAY and BSI. The Named Plaintiffs and members of the BSI Class, FAY Class, and Inspection Fee classes were reasonable in not assuming that FAY or BSI were aiding VENTURES TRUST's illegal activities.

102.    Any limitations period that may otherwise apply to claims of the Named Plaintiffs and members of the BSI Class, FAY Class, and Inspection Fee class members is tolled by since VENTURES TRUST, FAY and BSI had duties to disclose material facts to the Named Plaintiffs and BSI Class, FAY Class, and Inspection Fee class members related to VENTURES TRUST's illegal status. The omission of this fact made VENTURES TRUST's, BSI's, and FAY's acts unfair or deceptive.

103.    Due to their presumed and actual knowledge, as described *supra*, VENTURES TRUST, FAY, and BSI had an appreciation that they were not entitled to receive the benefits they were attempting to collect or actually collecting from the Named Plaintiffs and BSI Class, FAY Class, and Inspection Fee class members.

104.    Named Plaintiffs and the BSI Class, FAY Class class members are entitled to restitution

damages and losses from VENTURES TRUST, acting directly and indirectly through BSI and

FAY, since VENTURES TRUST is not permitted to profit off its illegal activities in Maryland.

To suggest otherwise would permit VENTURES TRUST to retain profits from its illegal activity.

105.    Named Plaintiffs and the Inspection Fee Class members are entitled to statutory damages

pursuant to COM. LAW § 12-121(a)(1)(ii)  for each inspection fee assessed to their mortgage

accounts by VENTURES TRUST through a capitalization of property inspection fees into

VENTURES TRUST's standard modification/forbearance agreements arranged and collected by

FAY and BSI.


## COUNT I
## DECLARATORY RELIEF
### (Against All Defendants)

106.    Named Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

107.    Named Plaintiffs and the Class Members are entitled to declaratory relief pursuant MD.

RULE 2-231 and CTS. & JUD PROC. § 3-409.

108.    Named Plaintiffs seek a declaration that: (a) Ventures Trust is not entitled, directly or

indirectly, as a matter of law to collect against any member of the Fay or BSI Classes while acting

as an unlicensed collection agency; (b) Named Plaintiffs also seek a declaration that Fay and BSI

may not, directly or indirectly threaten or actually utilize the assistance of any Maryland court to

collect or attempt to collect any consumer debt owed to Ventures Trust while it is acting as an

unlicensed collection agency; and (c) Ventures Trust, fay, and BSI must disgorge all profits and

32

capitalized profits received from Fay Class and BSI Class members including interest, property preservation fees, foreclosure costs, and other fees.

WHEREFORE, Named Plaintiffs pray that this Court to enter declaratory judgments in their favor and make the following Orders to:

    a. Certify this case as a class action pursuant to MD. RULE 2-231 with the Named Plaintiffs as the Class Representatives and their attorneys as counsel on behalf of the BSI Class and Fay Class described herein;

    b. Order and declare that as a matter of law, that Ventures Trust, BSI, Fay, and any other person acting on Venture Trust's behalf, including its authorized agents and attorneys, may not collect directly or indirectly from Named Plaintiffs and the BSI Class and Fay Class members' alleged debts;

    c. Order and declare that Ventures Trust, BSI, and Fay are required to disgorge all profits received from the Fay Class and BSI Class members including any capitalized profits;

    d. Order and declare that the Defendants are not entitled to the assistance of any Maryland Court to collect any alleged consumer debt of Named Plaintiffs or the BSI Class and Fay Class members;

    e. Order and declare that Ventures Trust is not entitled to the assistance of any Maryland Court to collect any alleged consumer debt of Named Plaintiffs or the BSI Class and Fay Class members;

    f. Award reasonable attorneys' fees, litigation expenses and costs;

    g. Order other appropriate declaratory relief; and

    h. Provide such other or further relief as the Court deems appropriate.

**COUNT II**
**COMMON LAW CLAIM ON BEHALF OF THE**
**BSI CLASS FOR UNJUST ENRICHMENT**
**(By All Named Plaintiffs on Their Behalf Individually and On Behalf of the BSI Class**
**Against Ventures Trust and BSI)**

109.    Named Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.  Named Plaintiffs pursue this action on behalf of the BSI Class members and themselves individually.

110.    Defendant Ventures Trust was not entitled to receive, directly or indirectly, any benefit (including profits) or payments directly traceable to its profits realized from the Named Plaintiffs and BSI Class member's payments which were applied by BSI to interest, fees, and costs unrelated to the principal portion of the payments.  An unlicensed collection agency is not permitted to profit from its illegal activities.

111.    Maryland law recognizes that a claim for unjust enrichment is permitted in instances like this one where even though a claim may be covered by a contract between the parties where (i) one party breaches the contract (by charging sums now lawfully charged), (ii)  the contract does not fully address a subject matter such as one party's illegal, criminal activity and (ii) there is evidence of fraud or bad faith when a party acts contrary to the law.  *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 100 (2000).

112.    As demonstrated herein, Ventures Trust and BSI have known their practices are illegal but have knowingly assumed the risk of continuing to collect without the right to so while concealing from Named Plaintiffs and the BSI Class members the true facts that Ventures Trust acted illegally through BSI.

113.    BSI and Ventures Trust have known or should have known since 2007 that VENTURES TRUST was required to have a license to act as a collection agency in the State of Maryland and VENTURES TRUST failed to obtain a license to act as collection agency before attempting and

actually collecting from Named Plaintiffs and the BSI Class members.  VENTURES TRUST and BSI have known since multiple Maryland state courts (*see* Exhibits 1-2) ruled VENTURES TRUST had no right to collect against the Named Plaintiffs and BSI Class members but they have continued to do so in disregard to those court orders and have knowingly continued to collect and attempt to collect from them under the color of law without the right to do so.

114.     Due to its knowledge, as described above, BSI and VENTURES TRUST  had an appreciation that neither was entitled to receive the benefits it was collecting from Named Plaintiffs and BSI Class members that flow from the payments collected and misdirected by BSI to permit VENTURES TRUST to profit from its illegal activities in the form of interest, costs, and fees realized from the Named Plaintiff's and the BSI Class members' payments (other than what was applied to the principal portion of their monthly payments).

115.     The acceptance and retention by BSI and VENTURES TRUST of any sums received as claimed interest, fees, and costs unrelated to the principal portion of their payments of Named Plaintiffs and BSI Class members under such circumstances is inequitable since BSI and VENTURES TRUST did not have the legal right to even collect such payments in the first instance in the manner it sought to collect them—this conclusion is just and proper even though VENTURES TRUST and BSI might have otherwise collected the alleged debts legally by obtaining a license. The amounts accepted and retained by VENTURES TRUST and BSI for interest, fees, and costs unrelated to the principal portion due from Named Plaintiffs and the BSI Class members on their mortgage loans are liquidated amounts.

WHEREFORE, Named Plaintiffs and the BSI Class Members pray that this Court:

a.     Certify this case as a class action with Named Plaintiffs as the class representatives for the BSI Class members and their attorneys as counsel on behalf of the BSI Class

members described herein;

b.      Grant a money judgment in favor of the Named Plaintiffs against BSI and VENTURES

TRUST and order the Defendants to disgorge and pay to the Named Plaintiffs and BSI

Class members a sum equal to all interest, fees, and costs unrelated to the principal portion

due from them that BSI and VENTURES TRUST have collected, and the benefits and

profits they realized, aggregated to a total sum for all BSI Class members in excess of

$75,000.00.

c.      Award reasonable attorney's fees, litigation expenses and costs; and

d.      Provide such other or further relief as the Court deems appropriate.

## COUNT III
### COMMON LAW CLAIM ON BEHALF OF THE FAY CLASS FOR UNJUST ENRICHMENT
### (BY NAMED PLAINTIFFS ON BEHALF OF THE FAY CLASS AGAINST FAY AND VENTURES TRUST)

116.    Named Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.  Named

Plaintiffs pursue this action on behalf of the FAY Class members and themselves individually.

117.    Defendant VENTURES TRUST was not entitled to receive, directly or indirectly, any

benefit (including profits) or payments directly traceable to its profits realized from the Named

Plaintiffs and FAY Class member's payments which were applied by FAY to interest, fees, and

costs unrelated to the principal portion of the payments.  An unlicensed collection agency is not

permitted to profit from its illegal activities.

118.    Maryland law recognizes that a claim for unjust enrichment is permitted in instances like

this one where even though a claim may be covered by a contract between the parties where (i)

one party breaches the contract (by charging sums now lawfully charged), (ii) the contract does

not fully address a subject matter such as one party's illegal, criminal activity and (ii) there is evidence of fraud or bad faith when a party acts contrary to the law. *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 100 (2000).

119.  As demonstrated herein, VENTURES TRUST and FAY have known their practices are illegal but have knowingly assumed the risk of continuing to collect without the right to so while concealing from Named Plaintiffs and the FAY Class members the true facts that VENTURES TRUST is acting illegally through FAY.

120.  VENTURES TRUST and FAY have known or should have known since 2007 that VENTURES TRUST was required to have a license to act as a collection agency in the State of Maryland and VENTURES TRUST failed to obtain a license to act as collection agency before attempting and actually collecting from Named Plaintiffs and the FAY Class members. VENTURES TRUST and FAY have known since multiple Maryland state courts (*see* Exhibits 1-2) ruled VENTURES TRUST had no right to collect against the Named Plaintiffs and FAY Class members but they have continued to do so in disregard to those court orders and have knowingly continued to collect and attempt to collect from them under the color of law without the right to do so.

121.  Due to its knowledge, as described above, FAY and VENTURES TRUST  had an appreciation that neither was entitled to receive the benefits it was collecting from Named Plaintiffs and FAY Class members that flow from the payments collected and misdirected by FAY to permit VENTURES TRUST to profit from its illegal activities in the form of interest, costs, and fees realized from named Plaintiff's and the FAY Class members' payments (other than what was applied to the principal portion of their monthly payments).

122.  The acceptance and retention by FAY and VENTURES TRUST of any sums received

as claimed interest, fees, and costs unrelated to the principal portion of their payments of Named Plaintiffs and FAY Class members under such circumstances is inequitable since FAY and VENTURES TRUST did not have the legal right to even collect such payments in the first instance in the manner it sought to collect them—this conclusion is just and proper even though VENTURES TRUST and FAY might have otherwise collected the alleged debts legally by obtaining a license. The amounts accepted and retained by VENTURES TRUST and FAY for interest, fees, and costs unrelated to the principal portion due from Named Plaintiffs and the FAY Class members on their mortgage loans are liquidated amounts.

WHEREFORE, Named Plaintiffs and the FAY Class Members pray that this Court:

a.   Certify this case as a class action with Named Plaintiffs as the class representatives for the FAY Class members and their attorneys as counsel on behalf of the FAY Class members described herein;

b.   Grant a money judgment in favor of the Named Plaintiffs against FAY and VENTURES TRUST and order the Defendants to disgorge and pay to the Named Plaintiffs and FAY Class members a sum equal to all interest, fees, and costs unrelated to the principal portion due from them that FAY and VENTURES TRUST have collected, and the benefits and profits they realized, aggregated to a total sum for all FAY Class members in excess of $75,000.00.

c.   Award reasonable attorney's fees, litigation expenses and costs; and

d.   Provide such other or further relief as the Court deems appropriate.

## **COUNT IV**
## **(INDIVIDUAL AND CLASS CLAIM PURSUANT TO COM. LAW § 12-121(A)(1)(II) ON BEHALF OF THE INSPECTION FEE CLASS**

**MEMBERS AND NAMED PLAINTIFFS INDIVIDUALLY AND ON
BEHALF OF THE INSPECTION CLASS
AGAINST ALL DEFENDANTS)**

123.   Named Plaintiffs incorporates all preceding paragraphs as if set forth fully herein.  This claim for state statutory damages pursuant to COM. LAW § 12-121(a)(1)(ii) is brought by Named Plaintiffs on behalf of themselves individually and on behalf of the Inspection Fee Class against the Defendants.

124.   The OCFR has determined, under its authority as Maryland's regulator implementing Maryland mortgage lender laws, that assignees of mortgage lenders and their servicers may not violate COM. LAW § 12-121(b).  The CPD has determined, under its authority pursuant to the MCPA, that it is unfair and deceptive for mortgage servicers to impose property inspection fees onto the mortgage accounts of borrowers in violation of COM. LAW § 12-121(b).

125.   As the owner and assignee of Named Palintiffs' and the Inspection Fee Class members' loans, VENTURES TRUST stands in the shoes of its assignor(s) (or their predecessors) who made the loans to Named Plaintiffs and the Inspection Fee Class members and has no greater rights as the assignee than the assignors (including those who made the loans).  VENTURES TRUST is therefore the maker of Named Plaintiffs' and the Inspection Fee Class members' by accepting the assignment of the loans and related deeds of trust.

126.   If the General Assembly had intended to exclude mortgage assignees like VENTURES TRUST from liability pursuant to COM. LAW § 12-121(b), it knew how to do so but did not. *Compare* COM. LAW § 12-1026(b)(5)(i)(1); *Blackstone v. Sharma*, 161 A.3d 718, 727, cert. granted, , 170 A.3d 290 (2017)(recognizing that an entity not "explicitly exempt[ed]" from a statutory scheme demonstrated that "the General Assembly expressed a clear intent to subject [the entity]" to the statutory scheme).

39

127.   COM. LAW § 12-121(b) prohibits a lender from imposing property inspection fees on named Plaintiffs' and the Inspection Fee class members after the origination of the subject loans. COM. LAW § 12-121(b) does not exempt VENTURES TRUST from its express prohibition.

128.   VENTURES TRUST was not entitled to require any charge to the mortgage loan accounts of Named Plaintiffs and the Inspection Fee class members related to property inspections to be capitalized into its standard loan modification/forbearance agreement since the fees were unrelated to the construction to a new home or repairs, alterations, or other work required by any lender. Ventures Trusts accepted the representations of the assignors to it without any evaluation whether all such fees were actually legal and due and owing.

129.   At all times relevant and material to this action in the three years before the commencement of this action, VENTURES TRUST has known or should have known that it were not permitted to require the imposition of unauthorized inspection fees to the mortgage accounts of Named Plaintiffs and the Inspection Fee Class members since all persons are expected to know the law.

130.   COM. LAW § 12-114(a)(1)(ii) provides that VENTURES TRUST, FAY, and BSI shall forfeit to borrowers like Ms. Martinson and the Inspection Fee Class members the sum of $500 for any violation of the subtitle including COM. LAW § 12-121(b).

131.   Named Plaintiffs and the Inspection Fee Class members are entitled to the sum of $500 for each inspection fee capitalized into VENTURES TRUST's standard modification agreement and imposed against the mortgage loan accounts of Named Plaintiffs and the Inspection Fee Class members pursuant to COM. LAW § 12-121(b).

WHEREFORE, Named Plaintiffs and Inspection Fee Class members pray that this Court:

a.      Certify this case as a class action with Named Plaintiffs as class representative for the Inspection Fee Class and their attorneys as class counsel

on behalf of the Inspection Fee Class members described herein;

b.      Grant a money judgment and order Defendants VENTURES TRUST, BSI, and FAY to forfeit and pay to the Named Plaintiffs and the Inspection Fee Class members $500 for each property inspection fee VENTURES TRUST has capitalized into its standard modification agreements arranged by BSI and FAY with them related to their mortgage loan accounts, aggregated to a total sum for all Inspection Fee Class members in excess of $75,000.00;

c.      Award prejudgment interest to the Named Plaintiffs and Inspection Fee Class members on the statutory damages they are entitled to receive;

d.      Award reasonable attorney's fees, litigation expenses and costs to the extent allowed by law; and

e.      Provide such other or further relief as the Court deems appropriate.

**Violation Maryland's the Maryland Consumer Debt Collection Act,
COM. LAW, §14-201 *et seq.* ("MCDCA") and the Maryland Consumer Protection Act, COM.
LAW, §13-101 *et seq.*
*et seq.* ("MCPA") by Named Plaintiffs on behalf of the BSI Class and the Fay Class**

132.    Named Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

133.    Defendants are collectors by their attempts and acts to collect upon debts of the Named Plaintiffs and FAY Class and BSI Class members arising out of consumer transactions—their loans used for personal purposes to acquire or refinance their homes and Property.  MD CODE ANN., COM. LAW §14-201(b).

134.    Through its communications to the Named Plaintiffs and the FAY Class and BSI Class members and those recorded in the land records of various counties and filed in the state courts, Defendants have attempted to assert the right to collect money from the Named Plaintiffs and FAY

Class and BSI Class members to which Ventures Trust had no legal right to attempt to collect because Ventures Trust is not licensed as a collection agency but is required to be licensed to collect directly or indirectly in the State of Maryland. These communications are made in violation of COM. LAW §14-202(8).

135.    Further, Ventures Trust, BSI, and Fay have maintained that each may cause foreclosure actions on behalf of Ventures Trust to be threatened and maintained even though Ventures Trust has no legal right to pursue the actions or even to collect directly or indirectly while acting without the proper collection agency in violation of COM. LAW §14-202(8). The State Courts, Named Plaintiffs and FAY Class and BSI Class members have relied upon these acts because the Defendants concealed from them the true facts that Ventures Trust was acting illegally.

136.    Finally, by recording and filing documents in the government's land and court records throughout the State of Maryland indicating that Ventures Trust has a right to collect payments from the Named Plaintiffs and FAY Class and BSI Class members, BSI, FAY, and Ventures Trust have used communications in collecting or attempting to collect a debt which improperly implies that the government or a government agency has authorized the collection effort when the government has not done so in violation of COM. LAW §14-202(9).

137.    Named Plaintiffs and the Class members are therefore entitled to their damages and losses described *supra* which have proximately resulted from Defendants' direct and indirect actions in violation of the MCDCA. COM. LAW, § 14-203.

138.    BSI's, FAY's, and Ventures Trust's violations of the MCDCA are also *per se* violations of the MCPA. COM. LAW § 13-301(14)(iii).

139.    The Named Plaintiffs' and FAY Class and BSI Class class members' actual damages, proximately caused by the Defendants, include the interest fees, costs, and other profits collected

by and capitalized by the Defendants related to the FAY Class and BSI Class members' loan. The Named Plaintiffs and FAY Class and BSI Class members seek <u>no</u> damages or losses under this count for any act or omission to any credit reporting agencies.

WHEREFORE Named Plaintiffs and the FAY Class and BSI Class members pray that this Court to enter judgment in their favor against the Defendants on their MCDCA/MCPA claims and to:

    a. Certify this case as a class action with Named Plaintiffs as class representatives for the FAY Class and BSI Class and their attorneys as class counsel on behalf of the FAY Class and BSI Class members described herein;

    b. Grant a money judgment in favor of the Named Plaintiffs and the FAY Class and BSI Class members against the Defendants for damages and losses aggregated to a total sum for all BSI Class and FAY Class members in excess of $75,000.00;

    c. Award reasonable attorney's fees, litigation expenses and costs; and

    d. Provide such other or further relief as the Court deems appropriate.

Respectfully Submitted,

_____

Phillip R. Robinson
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD 20910
Phone (301) 448-1304
*Attorney for Named Plaintiffs*

**Request for Jury Trial**

Named Plaintiffs request a jury trial on their individual and putative class claims asserted herein.

Phillip Robinson

2018 JUL 30 AM 11: 36
FILED
CLERK OF COURT
AT GREENBELT

44