IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM ROBINSON, *et al.*,           &ast;

  Plaintiffs,           &ast;

  v.           &ast;   Civil Action No. RDB-18-2710

FAY SERVICING, LLC, *et al.*,           &ast;

  Defendants.           &ast;

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

## MEMORANDUM OPINION

Plaintiffs William Robinson ("Mr. Robinson") and Tracie Lyers ("Ms. Lyers") (collectively, the "Named Plaintiffs" or "Plaintiffs"), on their individual behalf and behalf of three putative classes of similarly situated persons, bring this class action lawsuit[1] against Defendants Fay Servicing, LLC ("Fay"), Servis One, Inc. d/b/a BSI Financial Services ("BSI"), and Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, as Trustee for Ventures Trust 2013-I-H-R ("Ventures Trust") (collectively, the "Defendants"). Plaintiffs allege that Ventures Trust has unlawfully profited from collection activities related to the Plaintiffs' defaulted mortgage loans by failing to obtain the license required under the Maryland Collection Agency Licensing Act ("MCALA"), Md. Code Ann., Bus. Reg. § 7-101, *et seq.* and the Maryland Mortgage Lender Law ("MMLL"), Md. Code Ann., Fin. Inst. § 11-501, *et seq.* Additionally, Plaintiffs allege that BSI and Ventures Trust's standard modification/forbearance agreements improperly capitalized inspection fees claimed due from Plaintiffs in violation of Com. Law § 12-121(b).

---

[1] On September 24, 2018, this case was reassigned from the Honorable Paula Xinis to the undersigned.

Now pending before this Court is Defendants' Motion to Dismiss Plaintiffs' Amended Class Action Complaint for Failure to State a Claim and for Lack of Subject Matter Jurisdiction.[2] (ECF No. 8). The Court has reviewed the parties' submissions and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated herein, Defendants' Motion to Dismiss (ECF No. 8) is GRANTED. Plaintiffs' claims are DISMISSED WITH PREJUDICE.

## BACKGROUND

### I. Factual Background.

Plaintiffs allege that Defendants unjustly enriched themselves by engaging in mortgage debt collection practices which violated Maryland law. Defendants operate within the mortgage industry's secondary market, which springs from mortgage lenders' desire to offload the mortgages that they originate. (Am. Compl. ¶ 21.) In recent years, hedge funds and private equity funds have acquired thousands of defaulted consumer, mortgage loans. (*Id.*) The funds rely on collection agencies to extract profit from the mortgage loans they have acquired. (*Id.*)

Defendant Ventures Trust is a Delaware statutory trust established for the primary purpose of acquiring defaulted mortgage debts owed by consumers in Maryland. (*Id.* at ¶ 15.) It is not licensed as a Maryland collection agency or mortgage lender. (*Id.* at ¶ 5.) The trust acquires the loans for amounts well below that which is claimed to be owed on the debt. (*Id.*) Defendant BSI allegedly served as Ventures Trust's "debt collector" and "mortgage servicer"

---

[2]  This Court does not reach Defendants' subject matter jurisdiction argument, and accordingly construes the Motion as a Motion to Dismiss under Rule 12(b)(6).

between 2013 and 2017. (*Id.* at ¶ 16.) BSI in turn retained attorneys, substitute trustees, and other collection agencies to initiate foreclosures and other proceedings against Maryland homeowners. (*Id.*) Since 2017, Defendant Fay has allegedly donned the mantle of "debt collector" and "mortgage servicer" for Ventures Trust. (*Id.* at ¶ 17.) Plaintiffs' mortgage loan debts are among those which Ventures Trust obtained, and which BSI and Fay attempted to collect.

In about June 2004, Mr. Robinson refinanced his home with the now-defunct BankUnited FSB. (*Id.* at ¶ 22.) Following a reduction in household income, his loan entered default. (*Id.* at ¶ 23.) On December 14, 2014, Ventures Trust acquired by assignment all right, title, and interest to the loan. (*Id.* at ¶ 25.) On or about January 2, 2015, BSI allegedly became the mortgage servicer for Mr. Robinson's loan. (*Id.* at ¶ 24.) Neither Ventures Trust nor BSI informed Mr. Robinson that Ventures Trust was not licensed as a Maryland collection agency or mortgage lender. (*Id.* at ¶ 28.) Nevertheless, acting "on behalf of Ventures Trust," BSI collected from Mr. Robinson sums claimed due for interest, fees, and costs. (*Id.* at ¶ 32.) Also "on behalf of Ventures Trust," BSI entered into a modification agreement with Mr. Robinson which capitalized sums claimed due by BSI, including interest, fees, and costs. (*Id.* at ¶ 33.) Among these were property inspection fees originally imposed by BankUnited, FSB. (*Id.*) On February 9, 2017, Fay assumed BSI's debt collection activities. (*Id.* at ¶ 34.) Fay also demanded interests, fees, and costs associated with the defaulted mortgage loan. (*Id.* at ¶ 35.) As of the date of the Amended Complaint, the mortgage debt remains outstanding. (*Id.* at ¶ 40.)

The allegations with respect to Ms. Lyers' mortgage loan are substantially the same. On October 24, 2005, Ms. Lyers refinanced her home with Bank of America, NA. (*Id.* at ¶

41.)  Between December 2009 and September 2010, Bank of America charged Lyers with property inspection fees.  (*Id.* at ¶ 43.)  On January 1, 2011, Ms. Lyers' loan entered default. (*Id.* at ¶ 42.) On January 1, 2014, BSI acquired the mortgage servicing rights to the loan.  (*Id.* at ¶ 44.)  On January 30, 2014, Ms. Lyers' loan was transferred to Ventures Trust.  (*Id.* at ¶¶ 41, 45.)  Ventures Trust never disclosed to Ms. Lyers that it was not licensed as a Maryland collection agency or mortgage lender.  (*Id.* at ¶ 48.)  BSI, "on behalf of ventures trust," nevertheless modified the Lyers Loan and capitalized the sums claimed due, including interest, fees, and costs.  (*Id.* at ¶ 53.)  Among these were the inspection fees imposed by Bank of America, NA.  (*Id.*)  On February 10, 2017, Fay became the mortgage servicer for the loan and resumed collection efforts.  (*Id.* at ¶ 54.)  Ms. Lyers' loan is not satisfied.  (*Id.* at ¶ 60.)

## II.  Procedural Background.

On July 30, 2018, Plaintiffs commenced this class action in the Circuit Court for Montgomery County, Maryland.  On August 31, 2018, Defendants removed the case to this Court, asserting that jurisdiction was proper under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  (Notice of Removal, ECF No. 1.)   Plaintiffs have not challenged this basis for removal.  In their Original Complaint, Plaintiffs brought five Counts and alleged that Defendant Ventures Trust was required to obtain a license under the Maryland Collection Agency Licensing Act ("MCALA").

On August 8, 2018, the Maryland Court of Appeals determined that "foreign statutory trusts are outside of the scope of the collection agency industry regulated and licensed under

MCALA."[3] *Blackstone v. Sharma*, 461 Md. 87, 147, 191 A.3d 1188 (2018). Subsequently, on September 14, 2018, Plaintiffs filed an Amended Complaint (ECF No. 5) which, despite the Court of Appeal's ruling, continued to assert MCALA as a basis for holding Ventures Trust liable. Defendants moved to dismiss on September 28, 2018. (ECF No. 8.) On October 3, 2018, the Maryland Court of Appeals denied reconsideration of the *Blackstone* appeal. Subsequent to that decision, on October 18, 2018, this Court issued a Letter Order memorializing the result of a telephone conference with the parties in this case and two related cases, *Altenburg v. Caliber Home Loans, Inc., et al.*, RDB-16-3374 (the "*Altenburg* Action") and *Suazo, et al. v. U.S. Bank Trust, NA, et al.*, RDB-18-1451 (the "*Suazo* Action"). The Letter Order dismissed with prejudice Plaintiffs' declaratory judgment claim (Count I) and held that Plaintiffs' remaining claims (Counts II-V) were "barred so far as they allege violations of the Maryland Collection Agency Licensing Act . . . but remain as to a theory under the Maryland Mortgage Lender Law." (Letter Order, ECF No. 13.) On September 25, 2019, this Court dismissed the *Suazo* Action, which advanced claims almost identical to those presented here, holding in relevant part that foreign statutory trusts are not required to be licensed under the Maryland Mortgage Lender Law.

Now pending are the following claims: a common law claim for unjust enrichment by all Named Plaintiffs on behalf of the BSI class against Ventures Trust and BSI (Count II); a common law claim for unjust enrichment by Named Plaintiffs on behalf of the Fay Class

---

[3]    This ruling deviated from decisions of this Court, which held that foreign statutory trusts must obtain an MCALA license before pursuing a foreclosure action. *See Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 726-27 (D. Md. 2011); *Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC*, 929 F. Supp. 2d 502, 523 (D. Md. 2013); *Altenburg v. Caliber Home Loans, Inc.*, RDB-16-3374, 2017 WL 2733803, at *6 (D. Md. June 26, 2017).

against Fay and Ventures Trust (Count III); an inspection fee claim under Com. Law § 12-121(a)(1)(II) by the Named Plaintiffs and the Inspection Fee Class against all Defendants (Count IV); and alleged violations of the Maryland Consumer Debt Collection Act ("MCDCA"), Com. Law § 14-201, *et seq.* asserted by the Named Plaintiffs on behalf of the BSI Class and the Fay Class against all Defendants (Count V).

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a Court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim). Second, a Complaint must be

dismissed if it does not allege a "plausible" claim for relief. *Id.* at 678-79 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct allege.").

## ANALYSIS

### I.   Plaintiffs Fail to State a Claim under Counts II, III, and V.

Plaintiffs' allegations in Counts II, III, and V are premised on a faulty legal theory. Plaintiffs allege that Ventures Trust must either register as a debt collector under the Maryland Collection Agency Licensing Law ("MCALA") or as a mortgage lender under the Maryland Mortgage Lender Law ("MMLL"). Plaintiffs allege that Defendants may be held liable for unjust enrichment and violations of the Maryland Consumer Debt Collection Act because Ventures Trust profited from mortgage loans with the assistance of BSI and Fay. These legal theories are foreclosed by the Maryland Court of Appeals, the plain language of the MMLL, and a recent opinion of this Court. The Maryland Court of Appeals has conclusively held that foreign statutory trusts, and in particular Ventures Trust, is not required to obtain a license under MCALA. *Blackstone v. Sharma*, 461 Md. 87, 147, 191 A.3d 1188 (2018). Contrary to the Plaintiffs' assertions, *Blackstone* did not hold that Ventures Trust must therefore obtain a license under the MMLL. As this Court has recently held, foreign statutory trusts like Ventures Trust are not "mortgage lenders" as that term is defined in the MMLL and are therefore not required to obtain a license. *See Suazo v. U.S. Bank Trust, NA*, RDB-18-1451, 2019 WL 4673450 (D. Md. Sept. 25, 2019). As Plaintiffs' claims under Counts II, III, and V rise and fall on this legal theory, Counts II, III, and V are DISMISSED WITH PREJUDICE.

**A. Ventures Trust is not Required to Obtain a License under the Maryland Collection Agency Licensing Act.**

In its Letter Order (ECF No. 13), this Court determined that Plaintiffs' claims are barred in so far as they allege violations of the Maryland Collection Agency Licensing Act. Any such allegation is futile in light of the Maryland Court of Appeal's decision in *Blackstone*. In that case, the Maryland Court of Appeals held that "foreign statutory trusts are outside of the scope of the collection agency industry regulated and licensed under MCALA." *Blackstone*, 461 Md. at 147, 191 A.3d 1188. Accordingly, Plaintiffs may not pursue any claims on the theory that Ventures Trust was required to obtain an MCALA license.

**B. Ventures Trust is not Required to Obtain a License under the Maryland Mortgage Lender Law.**

Plaintiffs' alternative theory for liability under Counts II, III, and V also fail. Foreign statutory trusts like Ventures Trust are not "mortgage lenders" and need not obtain a license under the MMLL. This Court has recently addressed this issue in a prior Memorandum Opinion entered in a related case. *See Suazo*, 2019 WL 4673450, at *4-9. This Court hereby adopts the reasoning presented in its prior Opinion. This Memorandum Opinion reiterates the rulings presented therein and presents additional bases for dismissal.

**1. Collateral Estoppel and Res Judicata do not Prohibit Defendants from Arguing that Ventures Trust is not a "Mortgage Lender" under the MMLL.**

In response to the Motion to Dismiss, Plaintiffs argue that the doctrines of collateral estoppel and *res judicata* prohibit Defendants from arguing that Ventures Trust is not a "mortgage lender," as that term is defined under the MMLL. To prevail on their collateral estoppel argument, Plaintiffs must demonstrate: "(1) that the issue sought to be precluded is

identical to the one previously litigated ("element one"); (2) that the issue was actually determined in the prior proceeding ("element two"); (3) that the issue's determination was "a critical and necessary part of the decision in the prior proceeding ("element three"); (4) that the prior judgment is final and valid ("element four"); and (5) that the party against whom collateral estoppel is asserted had a fully and fair opportunity to litigate the issue in the previous forum ("element five"). *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217-18 (4th Cir. 2006) (citations omitted).

Plaintiffs cannot satisfy these elements. The issues presented here were not decided in *Blackstone.* As explained in greater detail below and in this Court's Memorandum Opinion in the Suazo Action, the *Blackstone* Court did not consider the scope of the MMLL. To the extent that Plaintiffs claim that counsel for Defendants in this action made contradictory statements to the Maryland Court of Appeals in *Blackstone*, this argument fails. (*See* ECF No. 14 at 1 n.1.) Counsel represented that "[Ventures Trust] owns the mortgage loans—it is the repository— and when the funds are received, they are for the benefit of the certificated holders," such as the Louisiana Teachers Retirement Fund. (*Blackstone* Webcast 6:54-7:01.) In other words, when the trust obtains a profit, the profits benefit the trust owners. Consistent with these representations, the Maryland Court of Appeals noted that a foreign statutory trust "is a business entity that is exclusively a repository for the loans," and "does not have any employees." *Blackstone*, 461 Md. at 138, 191 A.3d 1188 (citing *Deutsche Bank Nat. Tr. Co. v. Brock*, 430 Md. 714, 718, 63 A.3d 40 (2013). In this action, Defendants rely on their prior representations to the Court of Appeals and, as support for their arguments, quote findings of the *Blackstone* opinion which were based on those representations. Defendants'

representations to this Court do not contradict their prior representations; they are in fact the same. Accordingly, Defendants are not estopped from arguing that Ventures Trust is not a "mortgage lender" under the MMLL.

### 2. The *Blackstone* Court did not Hold that Ventures Trust Must Obtain a License under the Maryland Mortgage Lender Law.

Plaintiffs repeatedly argue that the *Blackstone* Court has already held that Ventures Trust must obtain a license under the Maryland Mortgage Lender Law. Although the *Blackstone* Opinion referenced the Maryland Mortgage Lender Law only once, Plaintiffs conclude that "*Blackstone* . . . recognized that the MMLL governed the activities of entities who acquire mortgage loans such as [Ventures Trust.]" (ECF No. 14 at 5.) They argue that *Blackstone's* "basic premise" is that "mortgage players like Ventures Trust are not required to register as collection agencies because they are already regulated." (*Id.*) *Blackstone*, however, drew no such conclusions.

As described at length in this Court's recent opinion in the *Suazo* Action, the *Blackstone* Court held only that MCALA did not regulate foreign statutory trusts. To ascertain the scope of MCALA, the *Blackstone* Court remarked upon the purpose of recent amendments to MCALA and other legislative actions. The Court recognized that the Maryland General Assembly sought to regulate two branches of the mortgage industry with two different sets of reforms. With amendments to the Maryland Collection Agency Licensing Act, the General Assembly set out to "regulate and license certain collection agencies." *Blackstone*, 461 Md. at 141, 191 A.3d 1188. The General Assembly resolved "to protect homeowners by adding certain requirements to the foreclosure process and heavier regulation of the mortgage

industry actions" with different enactments, including 2009 Maryland Laws Ch. 4, which—though unmentioned by the Court of Appeals—altered the definition of "mortgage lender" in the MMLL. *Id.* at 141, 191 A.3d 1188. Having determined that the purpose of MCALA was to regulate collection agencies separate and apart from other players in the mortgage industry, the Court of Appeals ultimately determined that MCALA's definition of "collection agencies" did not embrace "passive debt purchasers" like Ventures Trust. *Id.* at 120 n.17, 140-41, 191 A.3d 1188. The *Blackstone* opinion's discussion of the Maryland Mortgage Lender Law started and ended with these observations. *Blackstone* emphatically did not hold that foreign statutory trusts like Ventures Trust must obtain a license under the Maryland Mortgage Lender Law.

### 3. Foreign Statutory Trusts are not "Mortgage Lenders" under the Maryland Mortgage Lender Law.

Defendants argue that the MMLL does not require foreign statutory trusts like Ventures Trust to obtain a license as a mortgage lender. This Court has already indicated its agreement with this argument in the *Suazo* Action. This Court reiterates its reasoning here and applies it to this case.

The MMLL provides that "[a] person may not act as a mortgage lender unless the person" has a license or is exempt under the statute. Md. Code Ann., Fin. Inst. § 11-504. In 2009, the Maryland General Assembly amended the definition of the term "mortgage lender." 2009 Md. Laws Ch. 4. The current version of the statute defines the term to include "any person who: (i) is a mortgage broker; (ii) makes a mortgage loan to any person; or (iii) is a mortgage servicer." Fin. Inst. § 11-501(j)(i). The term "mortgage servicer" is defined as follows:

(n) "Mortgage servicer" means any person who:

(1) Engages in whole or in part in the business of servicing mortgage loans for others; or

(2) Collects or otherwise receives payments on mortgage loans directly from borrowers for distribution to any other person.

Fin. Inst. § 11-501(n).

Plaintiffs have not alleged that Ventures Trust is a "mortgage broker, *see* Fin. Inst. § 11-501(j)(i), or that it makes mortgage loans, *see Id.* at § 11-501(j)(ii). Rather, Plaintiffs argue that Ventures Trust fits the definition of a "mortgage servicer" in that it "engages in whole or in part in the business of servicing mortgage loans for others. (ECF No. 14, at 6 (quoting Fin. Inst. § 11-501(n)(1).) Plaintiffs reach this conclusion by reference to *Blackstone* and a unique interpretation of § 11-501(n). First, Plaintiffs note that the *Blackstone* Court described foreign statutory trusts in the mortgage industry as "a pool of loans that will eventually be sold off to others." *Blackstone*, 461 Md. at 138, 191 A.3d 1188. Next, Plaintiffs compare the two statutory definitions of a "mortgage servicer" as it appears in the MMLL and conclude that the act of "servicing mortgage loans for others," *see* Fin. Inst. § 11-501(n)(1), encompasses a broader range of activity than merely "collect[ing] or otherwise receiv[ing] payments on mortgage loans directly from borrowers for distribution to any other person," *see* Fin. Inst. § 11-501(n)(2). To conclude otherwise, Plaintiffs argue, would violate a classic canon of statutory construction by rendering § 11-501(n)(1) meaningless. Finally, Plaintiffs make an ambitious logical leap: they assert that a foreign statutory trust's mere existence as a "pool of loans that will eventually be sold off to others," as *Blackstone* put it, constitutes engaging "in whole or in part in the business of servicing mortgage loans for others." Fin. Inst. § 11-501(n)(1).

To determine the proper interpretation of this Maryland statute, this Court follows Maryland principles of statutory interpretation. *See State v. Exxon Mobil Corp.*, --- F. Supp. ---, ELH-18-0459, 2019 WL 4193422, at *39 (D. Md. 2019) (citing *In re DNA Ex Post Facto Issues*, 561 F.3d 294, 300 (4th Cir. 2009)). The "cardinal rule" of statutory interpretation under Maryland law is to "ascertain and effectuate the intent of the General Assembly." *Hollingsworth v. Severstal Sparrows Point, LLC*, 448 Md. 648, 655, 141 A.3d 90 (2016) (citing *McClanahan v. Washington Cnty. Dep't of Soc. Servs.*, 445 Md. 691, 701, 129 A.3d 293 (2015)). The "plain meaning rule" is designed to accomplish this task. Under this rule, courts must give the "ordinary and natural meaning to statutory language." *Id.* The Court must give effect to every word, and "avoid[] constructions that render any portion of the language superfluous or redundant." *State v. Holton*, 420 Md. 530, 541, 24 A.3d 678 (2011) (quoting *Gillespie v. State*, 370 Md. 219, 222, 804 A.2d 426 (2002)).

Employing these canons of construction, it becomes clear that the definition of "mortgage servicing" is not so broad as to encompass the mere act of holding title to defaulted mortgage loans. The MMLL defines the term "mortgage servicer" in a somewhat circular manner, setting forth that the term includes those who engage in the business of "servicing mortgage loans for others." Fin. Inst. § 11-501(n)(1). The MMLL does not further define the term "servicing mortgage loans," but the phrase ordinarily refers to "the administration of a mortgage loan, including the collection of payments, release of liens, and payment of property insurance and taxes." *Mortgage Servicing, Black's Law Dictionary* (10th Ed. 2014). This understanding of the term "servicing mortgage loans" in § 11-501(n)(1) both comports with the plain meaning of the term "mortgage servicing" and does not render § 11-501(n)(2)

superfluous. The definition in § 11-501(n)(1) encompasses a broad array of mortgage servicing activities such as releasing liens and paying property insurance; the second definition in § 11-501(n)(2) is constrained to the narrower task of "collect[ing] or otherwise receiv[ing] payments on mortgage loans directly from borrowers for distribution to any other person."

Neither of these definitions cover Ventures Trust both as that entity was understood in *Blackstone* or described in the Amended Complaint. Both of these sources indicate that Ventures Trust is a passive entity that merely holds title to mortgage loans. As such, it does not engage in any of the activities which potentially fall under the scope of "mortgage servicing." The *Blackstone* Court emphasized that foreign statutory trusts "are called 'special purpose vehicles' because they simply hold the loans managed by the trustees and collected by the mortgage servicers." *Blackstone*, 461 Md. at 138, 191 A.3d 1188. The Court noted that trusts like Ventures Trust are "exclusively a repository" for such loans, and that they lack "employees or offices." *Id.* at 118, 138, 191 A.3d 1188. The Amended Complaint confirms this. The Amended Complaint alleges that Ventures Trust is a foreign statutory trust which collects title to loans. (Am. Compl. ¶¶ 2, 15.) It does not indicate that Ventures Trust has employees, officers, or any physical existence whatsoever. Plaintiffs focus almost exclusively on the collection activities of BSI and Fay, which allegedly served as Ventures Trust's "debt collectors." (*Id.* at ¶¶ 16, 17.) Nearly every action allegedly taken by Ventures Trust was performed by either BSI or Fay "on behalf of Ventures Trust," which reveals that BSI and Fay, not Ventures Trust, performed all of these tasks. (*Id.* at ¶¶ 2, 5, 16, 17, 29, 32, 33, 34, 35, 36, 49, 52, 53, 55, 73, 135.) Even a broad construction of the term "mortgage servicing" does not encompass the entirely passive role that Ventures Trust takes in the mortgage industry.

Accordingly, Ventures Trust is not a "mortgage lender" under the Maryland Mortgage Lender Law and was not required to obtain a license under the statute.[4]

### 4. Assignees of Mortgage Lenders do not Themselves Constitute "Mortgage Lenders" under the Maryland Mortgage Lender Law.

Plaintiffs further argue that Ventures Trust is subject to the MMLL in its role as an assignee to mortgage lenders. Plaintiffs appear to suggest that, by virtue of assignment alone, assignees acquire the same legal characteristics of the assignor and are bound by the same regulations. (ECF No. 14, at 8.) In their Complaint, Plaintiffs alleged that "as the assignee of [the] maker of the loans," Ventures Trust "is now the lender and maker of the loans." (Am. Compl. ¶ 8.) In their briefing, Plaintiffs proclaim that "[W]hen Ventures Trust acquires Maryland mortgage loans like the Named Plaintiffs' loans . . . and the loans of the putative class members, it steps into the shoes of the maker of the loan and qualifies as a mortgage lender." (*Id.*) This Court has previously addressed these arguments in the *Suazo* Action.

Plaintiffs' position is simply without merit. It is certainly true that assignees acquire "every right which the assignor possessed under the mortgage at the time of the assignment." Md. Code Ann., Real Prop. § 2-103. Additionally, Maryland courts frequently describe assignees as "standing in the shoes" of the assignor or use like imagery. *Thompkins v. Mountaineer Investments, LLC*, 439 Md. 118, 139, 94 A.3d 61 (2014). Such metaphors do not suggest that one who assumes a contract thereupon assumes the same entity status as the assignor, thereby subjecting it to the same rules and regulations. Quite simply, one does not become a "mortgage lender" merely by obtaining title to a mortgage loan.

---

[4]     Defendants argue that the Maryland Mortgage Lender Law's recent legislative history confirms their view of the law. Because this Court finds that the plain language of the MMLL does not support Plaintiffs' theory, this Court need not resort to legislative history.

The only modern case Plaintiffs cite in support of their assignment argument, *Thompkins v. Mountaineer Investments, LLC*, does not suggest otherwise. In *Thompkins*, the Maryland Court of Appeals recognized that, in some cases, the assignee may assume the obligations and liabilities of the assignor. *Thompkins*, 439 Md. at 140, 94 A.3d 61. Ultimately, however, the Court concluded that an assignee of a second mortgage loan is not presumed to have assumed liabilities arising from the assignor's violations of the Maryland Secondary Mortgage Loan Law ("SMLL"). *Id.* at 140-41. *Thompkins*, therefore, does not suggest that assignees become subject to the same regulations which their assignors must obey. Far from it: *Thompkins* holds that assignees of second mortgages are not even subject to liability arising from the assignor's breach of Maryland law in connection with the creation of the mortgage.

The Maryland Mortgage Lender Law itself does not include assignees of mortgage loans under its definition of "mortgage lender." As previously indicated, this Court must look to the plain language of the MMLL to determine whether its definition of "mortgage lender" encompasses assignees of such lenders. In the course of its analysis, this Court must give effect to every word of the statute. It may not supply words which the General Assembly was capable of inserting but did not. *Chicago Title Ins. Co. v. Mary B.*, 190 Md. App. 305, 317-18, 988 A.3d 1044 (Md. Ct. Spec. App. 2010). The plain language of § 11-501(j) does not so much as mention assignees, only mortgage brokers, entities which make mortgage loans, and mortgage servicers. Elsewhere in the Maryland code, the General Assembly has demonstrated its ability to govern assignees explicitly. *Cf.* Md. Code Ann., Com. Law § 12-109.2(a)(3) ("'Lender'" includes a lender and assignee of a lender"); Real Prop. § 14-601(c) ("'Holder'"

means the mortgagee, trustee, beneficiary, nominee, or assignee of record."). In this case, it chose not to.

Plaintiffs' flip the rules of statutory construction on their head: they argue that, if the Maryland legislature intended to exclude statutory trusts from the definition of the MMLL, it should have included trusts within its list of entities exempted from the definition. (ECF No. 14, at 20-21 (citing Fin. Inst. § 11-501(j)(2).) Norms of statutory interpretation do not require legislative bodies to explicitly indicate which entities it seeks to exclude from a general definition. While exclusions and exemptions may help to illuminate the scope of a general definition, it is the definition itself that governs, not the exceptions. In this case, the definition of "mortgage lender" does not include assignees. The analysis starts and ends with this observation: the MMLL does not require assignees of mortgage loans to obtain a license.

Plaintiffs seek support for their position from actions of the Maryland Commissioner of Financial Regulation, who in December 2014 issued a Cease and Desist Order which analyzed the Maryland Mortgage Lender Law. To define the scope of the term "mortgage lender," the Commissioner reached beyond the definition of "mortgage lender" and observed the MMLL's definition of "mortgage lending business." *Id.* (citing Fin. Inst. § 11-501(k)(2)). This term encompasses "the making or procuring of mortgage loans secured by a dwelling or residential real estate located outside of Maryland." Fin. Inst. § 11-501(k)(2). Based on this observation, the Commissioner concluded that "[U]nless a person satisfies an exemption specified by Fin. Inst. § 11-501[(j)](2) . . . a person engaged in the acquisition of all or any portion of a mortgage loan is a mortgage lender and subject to licensing." *National Payment Relief, LLC*, CFR-FY 2014-0001, 2014 WL 7409911, at *3 (Dec. 8, 2014).

The Commissioner's conclusion does not dictate the outcome in this case. The Cease and Desist Order did not concern foreign statutory trusts, rendering this persuasive authority somewhat less relevant to the present issue. The entity subject to the Order, National Payment Relief, exhibited a far more active role in the mortgage industry than the foreign statutory trust at issue in this case. National Payment Relief had purchased defaulted mortgage debt, collected those debts, and falsely identified a third party as the mortgage servicer on the relevant loan. *See National Payment Relief*, 2014 WL 7409911, at *7-9. Moreover, this Court need not follow the same path trod by the Commissioner, who looked beyond the statutory definition of "mortgage lender" to define the scope of that term. The MMLL plainly states that "mortgage lenders" must obtain a license, and the statute expressly defines the term "mortgage lender." As explained *supra*, that definition does not encompass passive statutory trusts like Ventures Trust which merely hold title to loans. The term "mortgage lender" as defined in the statute is plain and unambiguous; it does not require reference to other, unrelated definitions. Even if resort to the definition of "mortgage lending business" were necessary, the definition would not support Plaintiffs' theory.

Plaintiffs invocation of Md. Code Regs. 09.03.06.03(A)(1) is also unavailing. This regulation sets forth that a person "*otherwise required to be licensed* under Financial Institutions Article § 11-502 . . . is not exempt" from that provision merely because the person:

(a) Is an out-of-State deposit-taking financial institution;

(b) Does not have offices in Maryland;

(c) Does not have tax situs in Maryland; or

(d) Is not required to register as a foreign corporation doing business in Maryland.

18

Md. Code Regs. 09.03.06.03(A)(1) (emphasis added).

Plaintiffs' argument with respect to this provision is somewhat difficult to decipher. As explained *supra*, however, Ventures Trust is not "otherwise required to be licensed" under the MMLL, and accordingly, the citation does not help Plaintiffs' case.

Ventures Trust is not required to obtain a license under the MMLL because it is not a mortgage lender, as that term is defined by the statute. Plaintiffs have failed to state a claim under Counts II, III, and V because these Counts are premised on their faulty legal theory that Defendants violated the MMLL by failing to acquire the proper licensing.[5]

## II.  Plaintiffs Fail to State a Claim under Count IV.

Under Count IV, Plaintiffs allege that Defendants assessed inspection fees in violation of Com. Law § 12-121. Maryland Law provides that "a lender may not impose a lender's inspection fee in connection with a loan secured by residential real property." Com. Law § 12-121(b). Certain exceptions apply. A lender may assess an inspection fee "if the inspection is needed to ascertain completion of: (1) Construction of a new home; or (2) Repairs, alterations, or other work required by the lender." *Id.* § 12-121(c). Defendants move to dismiss these claims, arguing in part that none of the Defendants are "lenders" as that term is defined under Com. Law § 12-121(b). This issue is decisive, and this Court need not address Defendants' alternative theories for dismissal of this Count.[6]

A "lender" under the statute is defined as "a person who makes a loan under this subtitle." Com. Law. § 12-101(f). The Amended Complaint does not allege that any of the

---

[5]     This Court need not reach potential alternative grounds for dismissal of these claims.
[6]     As alternative bases for dismissal, Defendants argue that Count IV's request for damages fails because Com. Law § 12-121(b) is not a "usury" provision and that Plaintiffs lack standing to assert Count IV.

Defendants make loans.  Defendant Ventures Trust was allegedly "established for the primary purpose of acquiring defaulted mortgage debts."[7] (Am. Compl. ¶ 15.)  Defendants BSI and Fay are "debt collector[s]." (Am. Compl. ¶¶ 16, 17.)   Accordingly, Defendants may not be held liable under the statute.

Plaintiffs argue that the Maryland Court of Appeals rejected this conclusion in *Taylor v. Friedman*, 344 Md. 572, 584, 589 A.2d 59 (1997).  In *Taylor*, the Maryland Court of Appeals considered whether the Maryland Court of Special Appeals erred when it concluded that § 12-121's prohibition against inspection fees applied only to closing costs.  The *Taylor* Court explained that the sole issue before it was "whether . . . § 12-121 of the Commercial Law Article (CL) prohibits a mortgagee from charging the mortgagor fees for post-default, visual inspections of the mortgaged residence's exterior that are made to ascertain the condition of the security." *Id.* at 574-75.  In the course of its discussion, the Court used the collective term "Lender" to describe the Respondents, various entities which had held the note secured by the deed of trust on the residence at issue in the case.  This term embraced the holder of the note secured by the deed of trust, Margaretten & Company, Inc. ("Margaretten"); the substitute trustees who were designated during foreclosure proceedings; and BA Mortgage, a Division of Bank of America, F.S.B., which acquired the note from Margaretten.  Ultimately, the Court of Appeals concluded that § 12-121 was not limited to closing costs, but rather is a "continuing prohibition throughout the life of the loan." *Id.* at 582, 689 A.2d 59.

---

[7]	Additionally, as a "passive debt purchaser," *see Blackstone*, 461 Md. at 120 n.17, 191 A.3d 1188, Ventures Trust cannot have "imposed" or "charged" any inspection fees.

*Taylor* does not stand for the proposition that assignees may be held liable under § 12-101(f). Although the Court described the various note holders in the case as "Lender" and appeared to subject each Respondent to the same analysis, it did not hold that each individual "lender" in the case could be held liable. Put simply, the Court never addressed whether the inspection fee statute applied to foreign statutory trusts like Ventures Trust or assignees. Neither *Taylor* nor any other authority holds[8] that Ventures Trust is subject to Maryland law's prohibition against inspection fees. Accordingly, Plaintiffs have failed to state a claim under Count IV.

## III.    The Amended Complaint is Dismissed with Prejudice.

"The determination whether to dismiss with or without prejudice under Rule 12(b)(6) is within the discretion of the district court." *Weigel v. Maryland*, 950 F. Supp. 2d 811, 825 (D. Md. 2013) (citing *180s, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638-39 (D. Md. 2009)). While a plaintiff "should generally be given a chance to amend his complaint . . . before the action is dismissed with prejudice," *Weigel*, 950 F. Supp. 2d at 825-26 (quoting *FinServ Cas. Corp. v. Settlement Funding, LLC*, 724 F. Supp. 2d 662, 674-76 (S.D. Tex. 2010)), dismissal with prejudice is appropriate where an amendment would be futile. *Cozzarelli v. Inspire Pharmaceuticals, Inc.*, 549 F.3d 618, 630 (4th Cir. 2008).

This Court dismissed Count I of the Amended Complaint with prejudice by Letter Order (ECF No. 13) dated October 18, 2018. This Court now finds that Plaintiffs have failed

---

[8]    Plaintiffs additionally reference a 2014 Advisory Notice issued by the Commissioner of Financial Regulation. This authority does nothing to advance Plaintiffs' case because it does not discuss assignee liability. As one persuasive authority recently indicated with respect to this Advisory Notice, "[T]he agency simply has not said that Section 12-121 applies to" a mortgage assignee or servicer. *Kemp v. Seterus*, No. 441428-V (Mont. Co. Cir. Ct. Oct. 19, 2018).

to state a claim under Counts II, III, IV, and V because these counts are premised on invalid legal theories. As no amendment can cure these defects, dismissal with prejudice is appropriate.

## CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss (ECF No. 8) is GRANTED. Plaintiffs' claims are DISMISSED WITH PREJUDICE.

A separate Order follows.

Dated: September 27, 2019

_____/s/_____
Richard D. Bennett
United States District Judge